**Reyes GARCIA, Aurora Garcia, Epifanio Garcia and Eloy Garcia, Petitioners-Appellants,**

v.

**Hal W. BOLDIN, Respondent-Appellee.**

No. 80–2352.

United States Court of Appeals, Fifth Circuit.

. Nov. 22, 1982.

---

1174

Law Offices of Lisa S. Brodyaga, Lisa S. Brodyaga, Harlingen, Tex., for petitioners-appellants.

Anna E. Stool, Mary L. Sinderson, Asst. U.S. Atty., Houston, Tex., for respondent-appellee.

Before COLEMAN, POLITZ and GARWOOD, Circuit Judges.

GARWOOD, Circuit Judge:

This is an appeal from the judgment of the district court denying appellants' petition for a writ of habeas corpus in which they seek to set aside a final order of deportation, the validity of which has been previously upheld by this Court. The primary questions are whether the district court had statutory authority to refer their petition to a federal magistrate for a hearing, and if so, whether appellants' petition raised new grounds which could not have been presented in the deportation proceedings or on the prior appeal. We hold that the district court had statutory authority to refer the petition to the federal magistrate for a hearing, and that the petition failed to raise new grounds which could not have been presented in the earlier proceedings. The district court's judgment is affirmed.

I.

Appellant Reyes Garcia is a citizen of Mexico, who entered the United States as a permanent resident in 1963. Mr. Garcia is married to Appellant Aurora Garcia, a United States citizen, and they have two children, Appellants Epifanio and Eloy Garcia, who are also United States citizens.

In December 1976, the Immigration and Naturalization Service ("INS") began deportation proceedings against Mr. Garcia after he was convicted of two drug-related offenses.[1] On August 28, 1977, a hearing was held before an immigration judge in which Mr. Garcia admitted deportability, but made an application for discretionary relief pursuant to 8 U.S.C. § 1182(c).[2] The immigration judge granted Mr. Garcia a waiver of excludability under 8 U.S.C. § 1182(a)(23)[3] and terminated the deportation proceedings. The INS appealed this decision to the Board of Immigration Appeals ("Board"), which reversed the immigration judge's decision, and ordered Mr. Garcia deported. Mr. Garcia filed a petition for review in this Court, which af-

---

1. On August 19, 1974, Mr. Garcia was convicted of conspiracy to unlawfully possess with the intent to distribute over 400 pounds of marihuana in violation of 21 U.S.C. §§ 841(a)(1) and 846. On January 19, 1976, Mr. Garcia was convicted for importing cocaine into the United States in violation of 21 U.S.C. § 952(a).

2. 8 U.S.C. § 1182(c) provides:
"Aliens lawfully admitted for permanent residence who temporarily proceeded abroad voluntarily and not under an order of deportation, and who are returning to a lawful unrelinquished domicile of seven consecutive years, may be admitted in the discretion of the Attorney General without regard to the provisions of paragraphs (1)–(25), (30), and (31) of subsection (a) of this section. Nothing contained in this subsection shall limit the authority of the Attorney General to exercise the discretion vested in him under section 1181(b) of this title."

3. 8 U.S.C. § 1182(a)(23) provides:
"(a) Except as otherwise provided in this chapter, the following classes of aliens shall be ineligible to receive visas and shall be excluded from admission into the United States:
". . . .
"(23) Any alien who has been convicted of a violation of, or a conspiracy to violate, any law or regulation relating to the illicit possession of or traffic in narcotic drugs or marihuana, or who has been convicted of a violation of, or a conspiracy to violate, any law or regulation governing or controlling the taxing, manufacture, production, compounding, transportation, sale, exchange, dispensing, giving away, importation, exportation, or the possession for the purpose of the manufacture, production, compounding, transportation, sale, exchange, dispensing, giving away, importation, or exportation of opium, coca leaves, heroin, marihuana, or any salt derivative or preparation of opium or coca leaves, or isonipecaine or any addiction-forming or addiction-sustaining opiate; or any alien who the consular officer or immigration officers know or have reason to believe is or has been an illicit trafficker in any of the aforementioned drugs; . . ."

firmed the Board's decision.[4] Mrs. Garcia and the children were not parties to the deportation proceedings or to the petition for review.

On June 12, 1980, Mr. Garcia, his wife, and their two children filed a petition for a writ of habeas corpus under 28 U.S.C. § 2241[5] and 8 U.S.C. § 1105a.[6] They also, in a memorandum to the trial court, asserted jurisdiction under the declaratory judgment act, 28 U.S.C. § 2201,[7] and under 5 U.S.C. § 703.[8] The district court referred their petition to a magistrate who conducted a hearing, considered the administrative record, the briefs of the parties, and recommended that the petition be denied. The district court accepted this recommendation, denied the petition, and dismissed the cause.

## II.

The Garcias' first contention is that the procedure used by the district court to dis-

4. *Reyes Garcia-Hernandez v. Immigration and Naturalization Service,* 613 F.2d 312 (5th Cir. 1980) (unpublished opinion).

5. 28 U.S.C. § 2241, in part, provides:
"(c) The writ of habeas corpus shall not extend to a prisoner unless—
"(1) He is in custody under or by color of the authority of the United States or is committed for trial before some court thereof; or
"(2) He is in custody for an act done or omitted in pursuance of an Act of Congress, or an order, process, judgment or decree of a court or judge of the United States; or
"(3) He is in custody in violation of the Constitution or laws or treaties of the United States; or
"(4) He, being a citizen of a foreign state and domiciled therein is in custody for an act done or omitted under any alleged right, title, authority, privilege, protection, or exemption claimed under the commission, order or sanction of any foreign state, or under color thereof, the validity and effect of which depend upon the law of nations; or
"(5) It is necessary to bring him into court to testify or for trial."

6. 8 U.S.C. § 1105a, in part, provides:
"(2) the venue of any petition for review under this section shall be in the judicial circuit in which the administrative proceedings before a special inquiry officer were conducted in whole or in part, or in the judicial circuit wherein is the residence, as defined in this chapter, of the petitioner, but not in more than one circuit;
".....
"(4) except as provided in clause (B) of paragraph (5) of this subsection, the petition shall be determined solely upon the administrative record upon which the deportation order is based and the Attorney General's findings of fact, if supported by reasonable, substantial, and probative evidence on the record considered as a whole, shall be conclusive;
".....

"(9) any alien held in custody pursuant to an order of deportation may obtain judicial review thereof by habeas corpus proceedings."

7. 28 U.S.C. § 2201, in part, provides:
"In a case of actual controversy within its jurisdiction, except with respect to Federal taxes . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such."

8. 5 U.S.C. § 703 provides:
"The form of proceeding for judicial review is the special statutory review proceeding relevant to the subject matter in a court specified by statute or, in the absence or inadequacy thereof, any applicable form of legal action, including actions for declaratory judgments or writs of prohibitory or mandatory injunction or habeas corpus, in a court of competent jurisdiction. If no special statutory review proceeding is applicable, the action for judicial review may be brought against the United States, the agency by its official title, or the appropriate officer. Except to the extent that prior, adequate, and exclusive opportunity for judicial review is provided by law, agency action is subject to judicial review in civil or criminal proceedings for judicial enforcement."
The Garcias' original petition for habeas corpus was based on 28 U.S.C. § 2241. In their memorandum in support of the petition, however, they asserted jurisdiction under 28 U.S.C. § 2241 and 8 U.S.C. § 1105a, and alternatively, under 28 U.S.C. § 2201 and 5 U.S.C. § 703. Their petition was subsequently amended to assert jurisdiction under 28 U.S.C. § 2241 and 8 U.S.C. § 1105a only. Despite their failure to assert jurisdiction under 28 U.S.C. § 2201 and 5 U.S.C. § 703 in their petition, we consider the Garcias' jurisdictional claims under those statutes.

pose of their petition for habeas corpus denied them due process of law.

The Garcias' primary argument is that the district court had no authority under 28 U.S.C. § 636(b)[9] to refer their petition to a magistrate for a hearing. They rely on the Supreme Court's decision in *Wingo v. Wedding,* 418 U.S. 261, 94 S.Ct. 2842, 41 L.Ed.2d 879 (1974). In *Wingo,* the Court held that a magistrate had no authority under 28 U.S.C. § 636(b) to conduct an evidentiary hearing on a prisoner's petition for a writ of habeas corpus. In response to this decision, Congress amended 28 U.S.C. § 636(b) to clarify and further define the duties which a district court could assign a magistrate.[10] The Garcias point out that section 636(b), as amended, does not specifically give the magistrate authority to conduct an evidentiary hearing on a petition for habeas corpus filed by an alien subject to deportation. They argue that the statute therefore fails to give the magistrate such authority. We disagree.

**9.** 28 U.S.C. § 636(b) (before 1976 amendments) provided:

"(b) Any district court of the United States, by the concurrence of a majority of all the judges of such district court, may establish rules pursuant to which any full-time United States magistrate, or, where there is no full-time magistrate reasonably available, any part-time magistrate specially designated by the court, may be assigned within the territorial jurisdiction of such court such additional duties as are not inconsistent with the Constitution and laws of the United States. The additional duties authorized by rule may include, but are not restricted to—

"(1) service as a special master in an appropriate civil action, pursuant to the applicable provisions of this title and the Federal Rules of Civil Procedure for the United States district courts;

"(2) assistance to a district judge in the conduct of pretrial or discovery proceedings in civil or criminal actions; and

"(3) preliminary review of applications for posttrial relief made by individuals convicted of criminal offenses, and submission of a report and recommendations to facilitate the decision of the district judge having jurisdiction over the case as to whether there should be a hearing."

**10.** 28 U.S.C. § 636(b) (as revised in 1976) provides:

"(b)(1) Notwithstanding any provision of law to the contrary—

"(A) a judge may designate a magistrate to hear and determine any pretrial matter pending before the court, except a motion for injunctive relief, for judgment on the pleadings, for summary judgment, to dismiss or quash an indictment or information made by the defendant, to suppress evidence in a criminal case, to dismiss or to permit maintenance of a class action, to dismiss for failure to state a claim upon which relief can be granted, and to involuntarily dismiss an action. A judge of the court may reconsider any pretrial matter under this subparagraph (A) where it has been shown that the magistrate's order is clearly erroneous or contrary to law.

"(B) a judge may also designate a magistrate to conduct hearings, including evidentiary hearings, and to submit to a judge of the court proposed findings of fact and recommendations for the disposition, by a judge of the court, of any motion excepted in subparagraph (A), of applications for posttrial relief made by individuals convicted of criminal offenses and of prisoner petitions challenging conditions of confinement.

"(C) the magistrate shall file his proposed findings and recommendations under subparagraph (B) with the court and a copy shall forthwith be mailed to all parties.

"Within ten days after being served with a copy, any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate. The judge may also receive further evidence or recommit the matter to the magistrate with instructions.

"(2) A judge may designate a magistrate to serve as a special master pursuant to the applicable provisions of this title and the Federal Rules of Civil Procedure for the United States district courts. A judge may designate a magistrate to serve as a special master in any civil case, upon consent of the parties, without regard to the provisions of rule 53(b) of the Federal Rules of Civil Procedure for the United States district courts.

"(3) A magistrate may be assigned such additional duties as are not inconsistent with the Constitution and laws of the United States.

"(4) Each district court shall establish rules pursuant to which the magistrates shall discharge their duties."

Congress made two changes which negate the Garcias' arguments. First, the initial sentence of the amended section begins with the phrase, "Notwithstanding any provision of law to the contrary—."

"This language is intended to overcome any problem which may be caused by the fact that scattered throughout the code are statutes which refer to 'the judge' or 'the court'. It is not feasible for the Congress to change each of those terms to read 'the judge or a magistrate'. It is, therefore, intended that the permissible assignment of additional duties to a magistrate shall be governed by the revised section 636(b), 'notwithstanding any provision of law' referring to 'judge' or 'court'." H.R.Rep. No. 94–1609, 94th Cong., 2d Sess. 9, *reprinted in* [1976] U.S. Code Cong. & Ad.News 6162, 6169.

This expression of congressional intent disposes of the Garcias' argument that the language in 28 U.S.C. § 2243 (unamended since the 1948 codification), providing for the entertaining of an application for a writ of habeas corpus by a "court, justice or judge," and for "[t]he court" to "hear and determine the facts, and dispose of the matter," prevents a magistrate from conducting a hearing.

Second, the revised section contains a "catchall" provision which provides for the assignment to a magistrate of any other duty "not inconsistent with the Constitution and the laws of the United States." 28 U.S.C. § 636(b)(3). The Garcias argue that this language fails to provide authority since the identical provision was part of the original section, which the Court in *Wingo* rejected as a basis for authority. The Garcias, however, overlook a change in the placement of the catchall provision within the revised section, and the congressional purpose behind it:

"This subsection enables the district courts to continue innovative experimentations in the use of this judicial officer. *At the same time, placing this authoriza-*

*tion in an entirely separate subsection emphasizes that it is not restricted in any way by any other specific grant of authority to magistrates.*

"...."

"If district judges are willing to experiment with the assignment to magistrates of other functions in aid of the business of the courts, there will be increased time available to judges for the careful and unhurried performance of their vital and traditional adjudicatory duties, and a consequent benefit to both efficiency and the quality of justice in the Federal courts." H.R.Rep. No. 94–1609, 94th Cong., 2d Sess. 12, *reprinted in* [1976] U.S.Code Cong. & Ad.News 6162, 6172 (emphasis added).

In view of this legislative history, we hold that the magistrate had authority under 28 U.S.C. § 636(b) to conduct the hearing on the Garcias' petition for habeas corpus.

The Garcias' next argument is that the magistrate erred in holding a hearing on their petition without first requiring the INS to file a return which responded to its factual allegations. Under 28 U.S.C. § 2243, the detaining authority, in response to a show cause order, must file a return showing the true cause of detention.[11]

 In this case, the show cause order directed the INS to file a return and to attach to it the record testimony and exhibits filed in the hearing before the immigration judge. The INS filed a certified record of the administrative hearings which showed the true cause of detention and which substantially answered the factual allegations of the petition. At the hearing on the petition, the magistrate heard oral arguments by attorneys for both parties in which they debated the factual and legal aspects of the case. The magistrate decided that the petition should be determined solely upon the administrative record and any briefs that the parties might choose to file. The magistrate heard no testimony. The Garcias filed a 44-page brief which exhaus-

---

11. 28 U.S.C. § 2243, in part, provides:
 "The person to whom the writ or order is directed shall make a return certifying the true cause of the detention."

tively treated all aspects of the case, and the INS responded with a brief which addressed the allegations of the petition and set forth the factual allegations upon which the detention was based. We hold that under these circumstances, the INS made a sufficient response to the factual allegations of the petition, and that its return substantially complied with 28 U.S.C. § 2243. *Marslin v. Schmucker,* 89 F.2d 765, 767 (4th Cir. 1937). Any error committed by the magistrate in refusing to require the INS to file a supplemental return which specifically responded to the allegations of the petition was harmless.

The Garcias' final procedural argument is that the district court erred in failing to make a *de novo* determination of the magistrate's report and recommendations. Under 28 U.S.C. § 636(b)(1), a district court must make a *de novo* determination of those parts of the magistrate's report, findings, or recommendations to which timely objection is made. A judge may, however, accept, reject, or modify in whole or in part, the magistrate's findings or recommendations.

The magistrate's report states that he found no evidence of a denial of due process which would support the relief sought, and that the complaints regarding the appeal to the Board did not "rise to the level of constitutional error." The Garcias objected to the failure of the magistrate to make proposed findings concerning the rights of Mrs. Garcia and the children, the commingling of functions within the INS, and the alleged untimeliness of the appeal to the Board. The district court, however, accepted the magistrate's recommendations and

signed an order of dismissal which recited that the court had reviewed the petition and the magistrate's report and recommendations.

■ Here, the record shows that the district court issued its order of dismissal on October 23, 1980, more than one week after the Garcias' objections were filed,[12] but before the transcript of the hearing before the magistrate was filed with the clerk's office. The record, however, does show that the hearing was tape recorded.[13] There is no indication whether the district court listened to the tapes of the hearing, or considered the administrative record and the briefs of counsel, upon which the magistrate's recommendation was made. The order of dismissal, on its face, tends to negate the suggestion that a *de novo* consideration of *the entire* proceedings before the magistrate was made, but the fact remains that whether, and if so to what extent, *de novo* consideration actually took place is unknown.

■ We have held that the mandated *de novo* determination, of the portion of the magistrate's report, proposed findings or recommendations to which timely objection is made, requires the district judge to read the transcript or listen to the tape recording of the evidence considered by the magistrate, before taking action respecting such matters on the basis of the magistrate's (or the court's) resolution of disputed factual issues. Thus, in *Calderon v. Waco Lighthouse For The Blind,* 630 F.2d 352, 356 (5th Cir. 1980), we stated that, in ruling on portions of the magistrate's fact-findings to which objection had been made, the district judge:

12. The Garcias' objections were filed on October 15, 1980. The district court's order of dismissal was dated October 23, 1980. The transcript was filed on January 9, 1981.

13. Where the *de novo* determination provided for in 28 U.S.C. § 636(b)(1) requires review of evidence considered by the magistrate, our decisions have indicated that if the magistrate's hearing is tape recorded the district judge may discharge this aspect of his responsibilities by listening to the tape recording in lieu of reading a transcription of the testimony. *Calderon v. Waco Lighthouse For The Blind,* 630 F.2d 352,

356 (5th Cir. 1980); *Nettles v. Wainwright,* 677 F.2d 404, 409 n. 5 (5th Cir. 1982) (en banc). *Cf. United States v. Marshall,* 609 F.2d 152, 155 (5th Cir. 1980) (opinion references "consulting the *transcript* of the hearing before the magistrate," emphasis added). Where the district judge makes material credibility choices *at variance* with those of the magistrate, the judge must, at least in certain cases, have a hearing at which he or she personally hears the testimony. *Louis v. Blackburn,* 630 F.2d 1105 (5th Cir. 1980).

"... *was* required to make a 'de novo determination' of the contested findings. 28 U.S.C. § 636(b)(1)(C). The decisions of the magistrate were decisions on the credibility of the various witnesses. A district court cannot make a 'de novo determination' of the credibility of a witness without at least reading a transcript or listening to a tape recording of the testimony of the witness. *Accord, Hill v. Jenkins, supra,* 603 F.2d [1256] at 1259 [(7th Cir.)]. *Cf. United States v. Marshall,* 609 F.2d 152, 155 (5th Cir. 1980) (holding that a district judge errs by *rejecting* the credibility findings of the magistrate without at least consulting the transcript of the proceedings before the magistrate)."

Here, action on the objected to portions of the magistrate's report did not involve credibility determinations or any resolution of disputed factual issues. The magistrate heard no testimony, and made no credibility determinations or findings of relevant disputed facts. The administrative record was available to the district judge, as it was to the magistrate. The district judge was in essence making rulings of law not dependent on his or the magistrate's resolution of disputed factual issues. In these circumstances, the mandated *de novo* determination did not require the district judge to listen to the tape recording, or read a transcription, of the proceedings before the magistrate. Of course, the district judge should in any event consider the magistrate's report, the objections made to it, and the briefs of counsel, but we are unwilling to assume that he did not do so, absent some clearer indication to such effect in the record. Moreover, where issues of law freely reviewable by us are independently fully determinative, it would be a most unusual case in which the district court's failure to accord the full measure of required *de novo* determination would be other than harmless error. Here, for example, the objections all concern contentions which, in part III of this opinion, we hold Mr. Garcia is in any event legally barred from presenting because such contentions could have been presented in the prior proceedings.

### III.

Having determined that the procedure used by the district court to dispose of the Garcias' petition for habeas corpus was proper, we now consider their contention that the district court erred in failing to hold that their petition raised new grounds which could not have been raised in the prior proceedings.

■ Under 8 U.S.C. § 1105a(c), the district court could not entertain the petition unless it raised new grounds which could not have been presented to the Board or to this Court on the prior appeal.[14] *See United States v. Esperdy,* 347 F.2d 149, 151 (2d Cir. 1965). The Garcias argue that three such grounds exist.

The first ground concerns the alleged untimeliness of the INS's appeal to the Board. Under 8 C.F.R. 242.21,[15] a notice of appeal must be filed within ten days after the service of a written decision. If the decision is served by mail, the time to file the notice is extended an additional three days.

■ The written decision of the immigration judge is dated August 29, 1977. The INS's notice of appeal is dated September 9, 1977, eleven days after the decision was signed. The record is devoid of any indication of whether the decision was mailed to

14. 8 U.S.C. § 1105a(c) provides in part:
 "No petition for review or for habeas corpus shall be entertained if the validity of the order has been previously determined in any civil or criminal proceeding, unless the petition presents grounds which the court finds could not have been presented in such prior proceeding, or the court finds that the remedy provided by such prior proceeding was inadequate or ineffective to test the validity of the order."

15. 8 C.F.R. 242.21 provides in relevant part:
 "An appeal shall be taken within 10 days after the mailing of a written decision, or the stating of an oral decision, or the service of a summary decision on Form I–38 or Form I–39.... When service of the decision is made by mail, as authorized by this section, 3 days shall be added to the period prescribed for the taking of an appeal."

the INS, and of when the notice of appeal was filed. It is, therefore, unclear whether the appeal was, in fact, untimely. The Garcias, however, argue that the appeal was untimely, and that the Board had no jurisdiction. They excuse the fact that this issue was not raised before the Board or in the prior appeal to this Court, because "the fact of the tardiness of the Service appeal did not come to light until the filing of the administrative record following the institution of the instant Habeas action." It is undisputed, however, that the notice of appeal was filed with the INS, and that it was part of the administrative record which was considered by this Court on the prior appeal. We find the Garcias' excuse insufficient.

Although the Garcias have failed to show that the jurisdictional issue could not have been raised in the prior proceedings, they argue that the Board's decision is a nullity since it was rendered without jurisdiction. We disagree. The Board is not a court, but it does act as a quasi-judicial body exercising appellate jurisdiction.[16] In deportation matters, its scope of review extends to the law, the facts, and the exercise of discretion in a particular case. Moreover, questions involving the Board's jurisdiction are determined by the Board itself. *Matter of Gamboa,* 14 I & N 244 (1972).

In Mr. Garcia's case, it is undisputed that if the appeal was, in fact, timely, then the Board had subject matter jurisdiction and jurisdiction over the parties. The timeliness of the appeal was therefore the only jurisdictional issue in Mr. Garcia's case, and the reversal of the immigration judge's decision was a tacit determination by the Board that the appeal was timely. *See Yanow v. Weyerhaeuser Steamship Company,* 274 F.2d 274, 277 (9th Cir. 1959) (en banc), *cert. denied,* 362 U.S. 919, 80 S.Ct. 671, 4 L.Ed.2d 739 (1960). By the same token, we could not have sustained the Board's reversal of the immigration judge if the Board had lacked jurisdiction to do so. The timeliness of the appeal could have been but was not questioned in Mr. Garcia's petition for review. Hence, neither the decision of the Board nor that of this Court is now subject to collateral attack on that basis.[17] Neither the Board's decision, nor

---

**16.** 8 C.F.R. 3.1(b) provides:

"(b) *Appellate jurisdiction.* Appeals shall lie to the Board of Immigration Appeals from the following:

"(1) Decisions of special inquiry officers in exclusion cases, as provided in Part 236 of this chapter.

"(2) Decisions of special inquiry officers in deportation cases, as provided in Part 242 of this chapter, except that no appeal shall lie from an order of a special inquiry officer under § 244.1 of this chapter granting voluntary departure within a period of at least 30 days, if the sole ground of appeal is that a greater period of departure time should have been fixed.

"(3) Decisions on applications for the exercise of the discretionary authority contained in section 212(c) of the act, as provided in Part 212 of this chapter.

"(4) Decisions involving administrative fines and penalties, including mitigation thereof, as provided in Part 280 of this chapter.

"(5) Decisions on petitions filed in accordance with section 204 of the act (except petitions to accord preference classifications under section 203(a)(3) or section 203(a)(6) of the act, or a petition on behalf of a child described in section 101(b)(1)(F)

of the act), and decisions on requests for revalidation and decisions revoking the approval of such petitions, in accordance with section 205 of the act, as provided in Parts 204 and 205, respectively, of this chapter.

"(6) Decisions on applications for the exercise of the discretionary authority contained in section 212(d)(3) of the act as provided in Part 212 of this chapter.

"(7) Determinations relating to bond, parole, or detention of an alien as provided in Part 242 of this chapter.

"(8) Decisions of special inquiry officers in rescission of adjustment of status cases, as provided in Part 246 of this chapter."

**17.** We also observe that the Board may reach a meritorious question presented by an untimely or otherwise questionable appeal by taking the case by certification pursuant to 8 C.F.R. 3.1(c). 8 C.F.R. 3.1(c) provides:

"(c) *Jurisdiction by certification.* The Commissioner, or any other duly authorized officer of the Service, or the Board may in any case arising under paragraph (b) of this section require certification of such case to the Board."

that of this Court sustaining it, whether erroneous or not, is a nullity. *See Yanow*, 274 F.2d at 279–80. *See also Chicot County Drainage District v. Baxter State Bank*, 308 U.S. 371, 376–78, 60 S.Ct. 317, 319–20, 84 L.Ed. 329, 333–35 (1939); *United States v. Utah Construction and Mining Co.*, 384 U.S. 394, 422, 86 S.Ct. 1545, 1560, 16 L.Ed.2d 642, 660 (1966).

 The next ground concerns the Garcias' argument that the commingling of functions within the INS during the pendency of Mr. Garcia's deportation proceedings deprived him of due process of law. The Garcias argue that the limited scope of the prior proceedings prevented Mr. Garcia from making an evidentiary record on which to base his claim of a denial of due process. Except where a genuine issue of material fact as to a petitioner's nationality is presented, a petition for review of a deportation order shall be determined solely upon the administrative record on which the deportation order is based. 8 U.S.C. § 1105a(a)(4). A court of appeals, therefore, reviews the administrative record only and will not conduct a *de novo* hearing on matters which could have been considered in the administrative proceedings, but were not. Where, however, alleged unfairness is extrinsic to the record, a court of appeals may remand the case to the agency for further inquiry and findings. 28 U.S.C. § 2347(c); [18] *Fleurinor v. Immigration and Naturalization Service*, 585 F.2d 129, 132 (5th Cir. 1978); *Martinez de Mendoza v.*

*Immigration and Naturalization Service*, 567 F.2d 1222, 1225 (3d Cir. 1977). *See* 2 Gordon & Rosenfield, *Immigration Law & Procedure*, § 8.9Ah at 8–93 (1982). Mr. Garcia made no such request in his prior petition for review. Moreover, the Garcias concede that they have long been aware of the commingling of functions and the lack of procedural safeguards within the INS, and that the essential facts which they claim tend to establish a violation of due process were known to them at the time of prior review.[19] Although they are correct in saying that the Board cannot entertain an attack on the constitutionality of the statutes it administers, *Matter of L*, 4 I & N 556 (1951), or on the validity of the regulations which govern its existence and operation, *Matter of Tzimon*, 10 I & N 101 (1962), the Garcias do not make such challenges.[20] Their complaint is that procedural errors committed by the INS during the pendency of the deportation proceedings deprived Mr. Garcia of a fair hearing. These matters could have been considered by the Board and by this Court on the prior review.

The final ground concerns the Garcias' argument that because Mrs. Garcia and the children were not parties to the deportation proceedings, their interests have not been administratively or judicially considered, recognized, or adjudicated. They further argue that since they were not parties to the prior proceedings they are not bound by them, and that the deportation order and

---

**18.** 28 U.S.C. § 2347(c) provides:

"(c) If a party to a proceeding to review applies to the court of appeals in which the proceeding is pending for leave to adduce additional evidence and shows to the satisfaction of the court that—

"(1) the additional evidence is material; and

"(2) there were reasonable grounds for failure to adduce the evidence before the agency;

"the court may order the additional evidence and any counterevidence the opposite party desires to offer to be taken by the agency. The agency may modify its findings of fact, or make new findings, by reason of the additional evidence so taken, and may modify or set aside its order, and shall file in the court the additional evidence, the modified findings

or new findings, and the modified order or the order setting aside the original order."

**19.** Since Mr. Garcia was aware of these matters, he would have had to have shown good cause for failing to attempt to raise them before the Board in order to be entitled to relief under section 2347(c). *Fleurinor*, 585 F.2d at 132.

**20.** Moreover, even such challenges could have been considered by this Court on the prior petition for review. *See Pilapil v. Immigration and Naturalization Service*, 424 F.2d 6, 10–11 (10th Cir.), *cert. denied*, 400 U.S. 908, 91 S.Ct. 152, 27 L.Ed.2d 147 (1970); 2 Gordon & Rosenfield, *Immigration Law & Procedure*, § 8.9Ah at 8–93 (1982). *Cf. Gibson v. FTC*, 682 F.2d 554, 559–60 (5th Cir. 1982).

the denial of discretionary relief may be challenged by them in the federal district court by habeas corpus or by declaratory review. We reject these arguments for the following reasons.

First, the administrative record unequivocally demonstrates that both the immigration judge, in granting the discretionary relief, and the Board, in denying it, considered the hardship that Mr. Garcia's deportation would have on his family.[21]

Second, Mrs. Garcia and the children have no standing to join in the petition for habeas corpus since they are not aliens "held in custody pursuant to an order of deportation" as required by 8 U.S.C. § 1105a(a)(9). *United States ex rel. Marcello v. Dist. Director of Immigration,* 634 F.2d 964 (5th Cir.), *cert. denied,* 452 U.S. 917, 101 S.Ct. 3052, 69 L.Ed.2d 421 (1981). Nor can they be said to be in custody under 28 U.S.C. § 2241. As United States citizens, Mrs. Garcia and the children are at liberty to go where they please, *cf. Jones v. Cunningham,* 371 U.S. 236, 83 S.Ct. 373, 377, 9 L.Ed.2d 285 (1966), and they have every right to remain in this country. *Perdido v. Immigration and Naturalization Service,* 420 F.2d 1179, 1181 (5th Cir. 1969).

Third, their attempt to seek declaratory review of the deportation order and the denial of discretionary relief cannot be entertained by the district court. The Garcias' original petition for habeas corpus asserted jurisdiction only under 28 U.S.C. § 2241. They asserted jurisdiction under 28 U.S.C. § 2201 and 5 U.S.C. § 703 only in a subsequently filed memorandum. *Thereafter,* the Garcias amended the petition to assert jurisdiction only under 28 U.S.C. § 2241 and 8 U.S.C. § 1105a. In any event, review in the courts of appeal is the exclusive procedure for the juridical review of final orders of deportation. 8 U.S.C. § 1105a(a)(2). Included within the term

"final orders of deportation" are all determinations made during the deportation proceedings, including an order denying discretionary relief. *Foti v. Immigration and Naturalization Service,* 375 U.S. 217, 84 S.Ct. 306, 11 L.Ed.2d 281 (1953); *Johns v. Department of Justice of United States,* 653 F.2d 884, 891–92 (5th Cir.1981). The Garcias' reliance on *Acosta v. Gaffney,* 558 F.2d 1153 (3d Cir. 1977), is misplaced. In that case, the validity of the deportation order was not challenged. The Court held that the citizen child of alien parents had standing to join them in a declaratory action which sought to review the INS's denial of a *stay* of a valid deportation order.[22] *See Cheng Fan Kwok v. Immigration and Naturalization Service,* 392 U.S. 206, 88 S.Ct. 1970, 20 L.Ed.2d 1037 (1968); *Johns,* 653 F.2d at 891–92.

Mrs. Garcia and the children are United States citizens. The deportation order has no legal effect upon them. It does not deprive them of the right to continue to live in the United States, nor does it deprive them of any constitutional rights. *Swartz v. Rogers,* 254 F.2d 338 (D.C.Cir.), *cert. denied,* 357 U.S. 928, 78 S.Ct. 1373, 2 L.Ed.2d 1372 (1958); *Enciso-Cardozo v. Immigration and Naturalization Service,* 504 F.2d 1252 (2d Cir. 1974); *Perdido v. Immigration and Naturalization Service, supra; Cervantes v. Immigration and Naturalization Service,* 510 F.2d 89 (10th Cir. 1975); *Acosta v. Gaffney, supra.* Mrs. Garcia and the children cannot use their citizenship to prevent the deportation of Mr. Garcia. *Aalund v. Marshall,* 461 F.2d 710, 714 (5th Cir. 1972). Any challenges to the validity of the deportation order should have been presented in the petition for review. *Johns,* 653 F.2d at 891–93; *Martinez de Mendoza v. Immigration and Naturalization Service, supra.*

---

21. In their petition for habeas corpus, the Garcias concede that Mrs. Garcia, and the children, are persons whose interests are intended to be protected by 8 U.S.C. § 1182(c).

22. Although the Court in *Acosta* held that the district court had jurisdiction to review the

refusal of the INS to stay its order of deportation, the Court qualified this by stating that "it may well be that in any event under section 106 of the Act the district court lacked jurisdiction to pass on the validity of the deportation order even thus tangentially." 558 F.2d at 1158.

**1184**

The Garcias have therefore failed to show that the grounds raised in their petition for habeas corpus could not have been presented earlier, and we find no basis for holding that the remedy provided by the prior proceedings was inadequate or ineffective to test the validity of the order. 8 U.S.C. § 1105a(c).

We hold that all of the Garcias' contentions are without merit and affirm the judgment of the district court.

AFFIRMED.