Edelynne AMERSON, Plaintiff,

v.

IMMIGRATION & NATURALIZATION SERVICE, Defendant.

No. Civ.A. 98–1841.

United States District Court, W.D. Louisiana, Alexandria Division.

Dec. 30, 1998.

**340**

Edelynne Amerson, Moreauville, LA, pro se.

## RULING

LITTLE, Chief Judge.

Before this court is the report of the magistrate recommending that we dismiss Edelynne Amerson's habeas corpus petition filed pursuant to 28 U.S.C. § 2241. Amerson, a permanent resident alien, alleges constitutional inadequacies in her removal proceedings. The magistrate concludes that under the Immigration and Nationality Act, we lack jurisdiction to review Amerson's petition because she has not alleged grave constitutional errors amounting to a miscarriage of justice. We find that this jurisdictional threshold sets the bar too high for habeas corpus review of a resident alien's constitutional claim. We therefore hold that we have jurisdiction to review Amerson's constitutional claims. Nevertheless, we find that she has not sufficiently alleged constitutional inadequacies in her deportation proceedings. Her habeas corpus petition is therefore DISMISSED.

## I. BACKGROUND

Petitioner Edelynne Amerson, a native of the Phillippines, entered the United States on 26 April 1982 and achieved permanent resident alien status on 22 November 1982. On 17 October 1995, Amerson was convicted of aggravated battery and possession of cocaine with intent to distribute in Louisiana state court. The Immigration and Naturalization Service ("INS") received notice of these convictions and on 17 September 1996 began removal proceedings pursuant to 8 U.S.C. § 1227(a)(2)(A)(iii) (removal due to conviction of aggravated battery) and (B)(I) (removal due to conviction of controlled substance offense). The INS found her removable under these statutes on 5 February 1998; the Board of Immigration Appeals dismissed her appeal on 24 July 1998. After the Fifth Circuit denied her final appeal on 16 September 1998, Amerson filed the instant petition for habeas corpus in this court on 24 September 1998, alleging violations of her due process rights in the removal proceedings. Amerson is currently incarcerated at the Bordelonville Correctional Center in Avoyelles, Louisiana, awaiting deportation. The magistrate has recommended in his report that we dismiss Amerson's habeas corpus petition because we lack jurisdiction to hear her claims under the Immigration and Nationality Act, 8 U.S.C. §§ 1101–1646 (1994 & Supp. II 1997) ("INA").

## II. ANALYSIS

We begin with a brief account of the relevant INA provisions. We will then review the relevant case law interpreting those provisions and assess the magistrate's report in light of those decisions.

### A. *Statutory Framework*

Prior to 1996, the INA allowed resident aliens to challenge an INS order deporting them by direct appeal to the circuit courts. *See* INA § 106(a) (previously codified at 8 U.S.C. § 1105a(a)). The INA provided for habeas corpus review in district courts, but only over collateral matters; that is, matters that did not challenge the validity of the deportation order. *See* INA § 106(a)(10) (previously codified at 8 U.S.C. § 1105a(a)(10)); *Garcia v. Boldin,* 691 F.2d 1172, 1183 (5th Cir.1982). The general habeas corpus statute, 28 U.S.C. § 2241, however, provided a means of habeas corpus review in the district courts over the deportation order itself. *See United States ex rel. Marcello v. District Director,* 634 F.2d 964, 967 (5th Cir. 1981).

In 1996, Congress passed two major pieces of legislation overhauling the INA, including

its judicial review provisions. The Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104–132, 110 Stat. 1214, 1277 (Apr. 24, 1996) ("AEDPA") stripped the circuit courts of jurisdiction to hear appeals from removal [1] orders based on certain enumerated criminal offenses, including the controlled substance and aggravated battery crimes that form the basis of Amerson's removal order. *See* AEDPA § 440(a).[2] AEDPA also repealed the INA's habeas corpus provision. *See id.* § 401(e).[3]

Congress enacted a more sweeping reform later that year by passing the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub.L. No. 104–208, 110 Stat. 3009 (Sept. 30, 1996) ("IIRIRA"). IIRIRA set forth two groups of rules for judicial review INS decisions: the permanent rules that took effect on IIRIRA's effective date and "transitional" rules that apply to aliens subject to deportation hearings prior to 1 April 1997, but who had not received a final deportation order until after 30 October 1996. *See* IIRIRA § 309(a), (c)(4); *Ibrik v. INS*, 108 F.3d 596, 597 (5th Cir.1997). The INS began its investigation of Amerson prior to 1 April 1997 and issued its final decision after 30 October 1996; the transitional rules therefore govern her case.

1. With AEDPA and IIRIRA, Congress changed the terminology from "deportation" and "deported" to "removal" and "removed."

2. "Judicial Review.... Any final order of deportation against an alien who is deportable by reason of having committed a criminal offense covered in section 241(a)(2)(A)(iii), (B), (C), (D), or any offense covered by section 241(a)(2)(A)(ii) for which both predicate offenses are covered by section 241(a)(2)(A)(*l*), shall not be subject. to review by any court." AEDPA § 440(a).

3. "Elimination of Custody Review by Habeas Corpus.—Section 106(a) of the Immigration and Nationality Act (8 U.S.C. 1105a(a)) is amended ... (3) by striking paragraph (10)." AEDPA § 401(e).

4. The transitional rules are not codified in the United States Code. IIRIRA § 309(c)(4)(G) provides: [T]here shall be no appeal permitted in the case of an alien who is inadmissible or deportable by reason of having committed a criminal offense covered in section 212(a)(2) or section 241(a)(2)(A)(iii), (B), (C), or (D) of the Immigration and Nationality Act (as in effect

The transitional rules restate AEDPA's jurisdiction stripping provision, *see* IIRIRA § 309(c)(4)(G),[4] and contain no provisions for habeas corpus review in the district courts. Furthermore, IIRIRA § 306(a)(g) erects a sweeping limitation on any court's jurisdiction to hear claims not specifically provided for in the INA:

(g) Exclusive Jurisdiction.

Except as provided in this section and notwithstanding any other provision of law, *no court shall have jurisdiction to hear any cause or claim* by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter.

IIRIRA § 306(a)(g), *adding* INA § 242(g) codified at 8 U.S.C. § 1252(g) (emphasis added). This limitation applies to all cases "without limitation to claims arising from all past, pending, or future exclusion, deportation, or removal proceedings under such Act." IIRIRA § 306(c)(1). This permanent rule therefore applies to Amerson's claim. *See Goncalves v. Reno*, 144 F.3d 110, 118 (1st Cir.1998) (applying IIRIRA § 306(a)(g) (new INA § 242(g) to a case governed by the transitional rules)).[5]

as of the date of the enactment of this Act), or any offense covered by section 241(a)(2)(A)(ii) of such Act (as in effect on such date) for which both predicate offenses are, without regard to their date of commission, otherwise covered by section 241(a)(2)(A)(*l*) of such Act (as so in effect).

The permanent rules contain a more sweeping prohibition on judicial review of criminal alien removal orders at § 306a(a)(2)(C):

Orders Against Criminal Aliens.—Notwithstanding any other provision of law, no court shall have jurisdiction to review any final order of removal against an alien who is removable by reason of having committed a criminal offense covered in section 212(a)(2) or 237(a)(2)(A)(iii), (B), (C), or (D), or any offense covered by section 237(a)(2)(A)(ii) for which both predicate offenses are, without regard to their date of commission, otherwise covered by section 237(a)(2)(A)(*l*).

5. The transitional rules do not differ from the permanent rules in any way relevant to Amerson's petition. Both strip jurisdiction from the circuit courts over direct review of criminal alien removal orders. Although the transitional rules

### B. Judicial Review Under the New Rules

In decisions too numerous to recount here, courts have struggled to determine what remains of their jurisdiction to review INS removal orders after these amendments. The first question that arose was the constitutionality of Congress's attempt to strip the circuit court's of jurisdiction over criminal alien appeals. The circuit courts have agreed that Congress could remove their jurisdiction so long as the possibility for judicial review of the removal orders remained elsewhere.[6] After AEDPA repealed the INA's habeas corpus provision, the only remaining "elsewhere" for review is the general habeas statute, 28 U.S.C. § 2241.[7] IIRIRA § 306(a)(g), however, seems to preclude even § 2241 habeas jurisdiction: *"no court shall have jurisdiction to hear any cause or claim."* Because this result would run afoul of the Constitutional Suspension Clause,[8] courts have construed IIRIRA narrowly and held that § 306(a)(g) does not preclude § 2241 habeas jurisdiction in the district courts.[9] Thus, Congress's repeal of circuit court appellate jurisdiction over criminal alien removal orders "suffers from no constitutional infirmity because the courts retain habeas jurisdiction under 28 U.S.C. § 2241." *Henderson v. INS,* 157 F.3d 106, 118 (2d Cir.1998).

The Fifth Circuit seemed to agree in *Williams v. INS,* 114 F.3d 82 (5th Cir.1997) when it upheld AEDPA's jurisdiction stripping provision in part because a "limited opportunity to apply for a writ of habeas corpus may remain." *Williams,* 114 F.3d at 84. *Williams* left open the question of what those limits might be in light of Congress's clear intent to limit judicial review of criminal alien removal orders. District courts in the Fifth Circuit have differed widely in their answers to that question. *Compare Thomas v. INS,* 975 F.Supp. 840 (W.D.La.1997) (Trimble, J.) (§ 2241 habeas jurisdiction limited to grave constitutional errors resulting in miscarriage of justice); *Cholak v. United States,* No. 98–365, 1998 WL 249222 (E.D.La. May 15, 1998) (Clement, J.) (same), *with Sabino v. Reno,* 8 F.Supp.2d 622, 641 (S.D.Tex.1998) (applying administrative review principles to arrive at "arbitrary and capricious review"), *and Perez v. Reno,* 18 F.Supp.2d 674 (W.D.Tex. 1998) ("[T]he appropriate scope of review [under § 2241] encompasses at least review of the statutory merits of Perez's complaint."), *and Udenze v. Strapp,* 977 F.Supp. 418, 421 (N.D.Tex.1997) (finding review completely precluded); *Safarian v. Reno,* 968 F.Supp. 1101, 1106 (E.D.La.1997) (Duval, J.) (finding § 2241 review completely barred). That question now faces this court as well.

### C. The Proper Scope of Jurisdiction Under § 2241

In recommending that we dismiss Amerson's case for lack of jurisdiction, the magis-

---

6. contain no habeas corpus provisions and the permanent rules do, that review is so limited that it would not affect our analysis. The permanent habeas corpus rules restrict habeas review to determining whether petitioner is an alien, whether the petitioner has been ordered removed, and whether the petitioner is a permanent resident alien. *See* IIRIRA § 306(e)(2). Finally, as noted, the broad limitation on judicial review in § 306(a)(g) applies under both regimes. We would therefore reach the same conclusion with respect to our § 2241 habeas jurisdiction over Amerson's claim even under the permanent rules.

6. *See Magana–Pizano v. INS,* 152 F.3d 1213, 1220–21 (9th Cir.1998), *petition for cert. filed,* 98–836 (Nov. 18, 1998); *Jean–Baptiste v. Reno,* 144 F.3d 212, 219 (2d Cir.1998); *Goncalves v. Reno,* 144 F.3d 110, 123 (1st Cir.1998), *petition for cert. filed,* 98–835 (Nov. 18, 1998); *Mansour v. INS,* 123 F.3d 423, 426 (6th Cir.1997); *Turkhan v. INS,* 123 F.3d 487, 489–90 (7th Cir.1997);

*Ramallo v. Reno,* 114 F.3d 1210, 1214 & n. 1 (D.C.Cir.1997), *petition for cert. filed,* 97–526 (Sept. 24, 1997); *Fernandez v. INS,* 113 F.3d 1151, 1154–55 (10th Cir.1997); *Salazar–Haro v. INS,* 95 F.3d 309, 311 (3d Cir.1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 1842, 137 L.Ed.2d 1046 (1997).

7. 28 U.S.C. § 2241 provides in relevant part:

"The writ of habeas corpus shall not extend to a prisoner unless—
(1) He is in custody under or by color of the authority of the United States...."

8. Article I, Section 9 of the United States Constitution provides: "The Privilege of the Writ of Habeas Corpus shall not be suspended, unless when in Cases of Rebellion or invasion the public Safety may require it."

9. *See, e.g., Magana–Pizano,* 152 F.3d at 1220–21; *Goncalves,* 144 F.3d at 119–23; *Jean–Baptiste,*

trate relied on *Thomas v. INS,* 975 F.Supp. 840 (W.D.La.1997); we therefore begin our inquiry with a review of that case. The INS sought to deport Thomas for a controlled substance conviction. Thomas filed a habeas petition in district court claiming that the INS deprived him of due process of law when the immigration judge found him ineligible to apply for discretionary relief from removal. Thomas also applied for a stay of deportation. *See id.* at 841. The court dismissed Thomas's due process claim and stay petition on different grounds.

First, the court noted that even before AEDPA and IIRIRA, it lacked § 2241 habeas jurisdiction to review any habeas petition challenging the validity of a removal order.[10] *See id.* at 849 (relying on *Garcia v. Boldin,* 691 F.2d 1172 (5th Cir.1982)). Thomas' due process challenge did question the validity of the removal order, so the court determined that even prior to AEDPA and IIRIRA, it lacked jurisdiction to hear his constitutional challenge. *See id.* at 849–50.

Second, the court considered the effect of AEDPA and IIRIRA on its jurisdiction to review collateral matters such as Thomas' stay petition. The court concluded that while a plain reading of IIRIRA § 306(a)(g) would abolish even its § 2241 habeas jurisdiction, that result would run afoul of the Constitution's Suspension Clause. *See id.* at 849. The court agreed with several other district courts, however, that some limitation on its § 2241 jurisdiction was warranted in light of the clear congressional intent to restrict judicial review of the INS's removal orders. *See id.* The court therefore held that AEDPA and IIRIRA limited its § 2241 habeas jurisdiction to a review of only grave constitutional errors resulting in a great miscarriage of justice. *See id.* Although the stay petition was a collateral matter cognizable under the court's pre-amendment jurisdiction, it did not meet the grave constitu-

tional error standard. The court therefore dismissed Thomas's stay petition as well.

We disagree with the *Thomas* court on both of its conclusions. First, the court erroneously relied on *Garcia v. Boldin,* 691 F.2d 1172, 1183 (5th Cir.1982) for the proposition that its § 2241 habeas jurisdiction included only collateral matters under pre-AEDPA and IIRIRA law. Under the *Thomas* court's reading of *Boldin,* we would be barred from reviewing Amerson's habeas claim because it challenges the validity of her removal order. But *Boldin* construed its habeas jurisdiction under the INA's now-repealed habeas corpus statute in light of the INA's older judicial review provisions. *Boldin* should not be construed to limit the district court's habeas jurisdiction under § 2241, and we think that *Thomas* erred in so holding.

Even if we had read *Boldin* before AEDPA and IIRIRA as the *Thomas* court does, we doubt that such a result would now pass constitutional muster. The *Boldin* court reasoned that habeas review[11] in the district courts should be limited to collateral matters because review of the deportation order itself was available in circuit court. *See id.* That avenue has now been stripped away by Congress, leaving criminal aliens only a § 2241 petition to raise constitutional challenges to removal orders. If we read *Boldin* to limit our § 2241 habeas jurisdiction to only collateral matters, criminal aliens will have no forum in which to raise constitutional challenges to the removal order itself. This result, as noted above, runs afoul of the Suspension Clause. We therefore hold that *Boldin* does not bar our habeas corpus review of Amerson's habeas challenge to her removal order.

We also disagree with *Thomas'* "grave constitutional error" threshold for finding § 2241 habeas jurisdiction. *Thomas,* following several other early district court opinions on AEDPA and IIRIRA, adopted this higher

144 F.3d at 219; *Ramallo,* 114 F.3d at 1214 & n. 1.

**10.** The court never expressly indicated that it considered Thomas's habeas case as a § 2241 petition, but that is the only logical conclusion. Although Thomas argued for the court's habeas jurisdiction under the INA's habeas provision,

that section had been repealed by AEDPA and could not have formed the basis for the court's decision.

**11.** We reiterate that the most reasonable reading of *Boldin* is limited to the INA's now-repealed habeas provisions rather than the general habeas relief provided by § 2241.

standard to try and square Congress' desire to limit judicial review of criminal alien removal orders with the limitations of the Suspension Clause. *See Thomas*, 975 F.Supp. at 848–50; *Mbiya v. INS*, 930 F.Supp. 609, 612 (N.D.Ga.1996) ("This accommodation preserves the balance between the Suspension Clause and Congress' plenary authority to control immigration."). Several courts since *Thomas*, however, have demonstrated that this standard mixes apples and oranges in a way that fails to account adequately for the due process of law afforded to resident aliens under the Constitution. Furthermore, this high standard rests on principles of federalism foreign to the issues raised by federal executive detention. We therefore reject the magistrate's report because it relies on this unduly high threshold for our § 2241 habeas jurisdiction.

The First, Second, and Ninth Circuit Court of Appeal have all noted the due process problems raised when the "grave constitutional error" standard is applied to criminal aliens under executive detention who have not yet received any judicial review of their constitutional complaints.

In *Goncalves v. Reno*, 144 F.3d 110 (1st Cir.1998), the First Circuit rejected the Attorney General's argument that AEDPA and IIRIRA limited the scope of a district court's § 2241 habeas jurisdiction to "substantial claims of violation of constitutional rights amounting to a fundamental miscarriage of justice." *Id.* at 118. The court noted that this standard has been borrowed from federal habeas corpus review of state court detention, and distinguished that situation from habeas review of federal executive detention:

> In cases concerning collateral review of state and federal convictions, a prisoner has already had substantial judicial review of his claims, including a trial and direct review of his conviction, often with multiple levels of review, and is seeking post-conviction relief. In [an alien's] case, by contrast, no court, state or federal, has heard his claims.

*Id.* at 124. The Second Circuit echoed this reasoning in *Henderson v. INS*, 157 F.3d 106 (2d Cir.1998). Federal courts need only examine state prisoners' habeas petitions for "grave constitutional errors" because state prisoners have already enjoyed *full judicial process* and appeals in the state system, and an opportunity for a writ of certiorari from the Supreme Court. *See id.* at 120 (quoting *Goncalves*, 144 F.3d at 118 n. 8). Removable aliens petitioning for habeas corpus, however, are imprisoned in the "totally dissimilar setting of executive detention, a context in which the petitioners have never had their claims reviewed by any court, federal or state." *Henderson*, 157 F.3d at 120; *see also Magana–Pizano v. INS*, 152 F.3d 1213, 1221–22 (9th Cir.1998) ("The 'fundamental miscarriage of justice' requirements have been imposed judicially only in cases of successive petitions where the abuse of the writ doctrine would otherwise bar a subsequent petition."). The "grave constitutional error" threshold, then, rests on the notion that the petitioner's rights have already been protected by a certain amount of due process of law in the form of judicial review. That higher threshold is inapposite here because Amerson has received no judicial review at all.

The "grave constitutional error" standard also rests on notions of federalism that do not apply in this case. Federal courts limit habeas review of state court judgments out of respect for the states as separate sovereigns. "Resort to habeas corpus ... results in serious intrusions on values important to our system of government. They include ... (iii) the minimization of friction between our federal and state systems of justice, and (iv) the maintenance of the constitutional balance upon which the doctrine of federalism is founded." *Stone v. Powell*, 428 U.S. 465, 491 n. 31, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976). Thus, "federal courts exercising their habeas powers may refuse to grant relief on certain claims because of 'prudential concerns' such as equity and federalism." *Withrow v. Williams*, 507 U.S. 680, 699, 113 S.Ct. 1745, 123 L.Ed.2d 407 (1993) (O'Connor, J., concurring in part and dissenting in part).

No such deference is appropriate to an executive agency's decision when constitutional errors are alleged. On the contrary, the historical use of the Great Writ teaches that close judicial scrutiny is appropriate. A prisoner in executive detention could tradi-

tionally challenge all issues bearing on the legality of a detention. *See Henderson,* 157 F.3d at 121 (quoting Developments in the Law–Federal Habeas Corpus, 83 Harv. L.Rev. 1038, 1238 (1970)). Because "[t]he primary historical use of the writ of habeas corpus was precisely against executive detention[,]" *id.* at 120, the "grave constitutional error" standard is "to put it mildly, not only at war with the historical record ... [but] also hard to square with the core conception of habeas corpus as it has been applied over many centuries." *Id.*

■ In sum, the "grave constitutional error" standard for our habeas corpus jurisdiction fails to account for due process concerns and imports a misplaced notion of federalism. We therefore do not agree that it strikes the proper balance between Congress' intent and the Suspension Clause. In light of IIRIRA's restriction on direct review of a criminal alien's challenge to a removal order, we must retain habeas jurisdiction over at least constitutional claims in order to comply with the demands of due process. Notwithstanding Congress' apparent attempt to eliminate all meaningful judicial review of criminal alien removal orders, Amerson has fulfilled the requirements of § 2241 for habeas corpus review in this court: she is in detention and alleges constitutional defects in the procedures that put here there. We need not go so far in this case as to declare, as the First, Second, and Ninth Circuits have, that our § 2241 habeas jurisdiction extends even to pure issues of law. Although that conclusion seems persuasive, Amerson does not present such claims. We do hold that we retain jurisdiction under 28 U.S.C. § 2241 to review Amerson's habeas corpus petition for constitutional errors, without limitation to "grave errors" resulting in a "fundamental miscarriage of justice."

### D. *The Merits of Amerson's Claims*

■ Having determined that we retain § 2241 habeas jurisdiction over Amerson's constitutional claim, we may now assess the sufficiency of her petition. She asserts two grounds for release: Fifth Amendment Due Process and Sixth Amendment ineffective assistance of counsel. Amerson alleges "prose-

cutorial misconduct" as the basis for her due process claim, but in support of that claim states only that the prosecutor failed to account for her productive work activities and deteriorating medical condition. These complaints do not amount to a cognizable due process violation. That claim is therefore DISMISSED WITHOUT PREJUDICE. Amerson has no Sixth Amendment right to counsel in a removal hearing, and thus has no ineffective assistance of counsel claim. *See Prichard–Ciriza v. INS,* 978 F.2d 219 (5th Cir.1992). Although lack of representation may rise to the level of fundamental unfairness in violation of Amerson's Fifth Amendment Due Process rights, *see Ogbemudia v. INS,* 988 F.2d 595 (5th Cir.1993), we have already noted that Amerson has made no such allegations in her petition. As such, her ineffective assistance of counsel claim is DISMISSED WITH PREJUDICE.