**Richard A. THOMAS**

v.

**IMMIGRATION AND NATURALIZATION SERVICE, et al.**

**Civil Action No. 97–659.**

United States District Court, W.D. Louisiana, Lake Charles Division.

Aug. 15, 1997.

Richard A. Thomas, Beauregard Parish Jail, DeRidder, LA, pro se.

## JUDGMENT

TRIMBLE, District Judge.

After consideration of the objections to the proposed findings of fact and conclusions of law in the Report and Recommendation of the Magistrate Judge previously filed herein these findings and conclusions are accepted. Further, an independent review of the record has led this court to conclude that the proposed findings and conclusion are entirely correct. Accordingly,

**IT IS ORDERED** that petitioner's challenge to the order of deportation issued against him and request for a stay of deportation is **DISMISSED WITH PREJUDICE** as this court is without subject matter jurisdiction to review these matters.

## REPORT AND RECOMMENDATION

WILSON, United States Magistrate Judge.

In accordance with the standing order of this court, this matter was referred to the undersigned Magistrate Judge for review, report, and recommendation.

## STATEMENT OF CLAIM

Pending before the court is a "Motion for Review of Final Deportation Order and for Stay of Deportation" filed on April 3, 1997 by *pro se* petitioner, Richard A. Thomas. Petitioner is a criminal alien detained by the Immigration and Naturalization Service (INS).

Petitioner is a citizen and native of Trinidad who entered the United States in 1983 as a lawful permanent resident at twenty years of age. On December 9, 1994, petitioner was convicted of possession and delivery of cocaine. On August 9, 1996, petitioner conceded his deportability and was ordered deported. Petitioner was not given an opportunity to apply for discretionary relief from deportation, because he was ineligible for such relief under relevant jurisprudence.

Petitioner does not dispute that he is deportable. He argues only that he should be given the opportunity to apply for relief from deportation under § 212(c) of the Immigration and Nationality Act (INA), (8 U.S.C. § 1182(c)). Section 212(c) allows the Attorney General to waive inadmissibility of aliens who are found to be inadmissible upon certain grounds specified in § 212(a), (8 U.S.C. § 1182(a)).[1] Petitioner seeks discretionary relief from deportation and a stay of deportation until this court issues a final ruling on this petition. Petitioner seeks no other relief.

After reviewing the petition and the attachments thereto and for the following reasons, **IT IS RECOMMENDED** that this proceeding be **DISMISSED WITH PREJUDICE.**

### *LAW AND ANALYSIS*

### I. Background

Petitioner was found deportable § 241(a)(2)(B)(i), (8 U.S.C. § 1251(a)(2)(B)(i)) (controlled substance violation) and § 241(a)(2)(A)(iii), (8 U.S.C. § 1251(a)(2)(A)(iii) (aggravated felon)). In a deportation hearing conducted in Oakdale, Louisiana, an immigration judge found that based upon these convictions, petitioner was statutorily ineligible for discretionary relief from deportation. Therefore, petitioner was not given an opportunity to apply for such relief. Petitioner appealed the denial of discretionary relief to the Board of Immigration Appeals (BIA) which affirmed the decision of the immigration judge and dismissed the appeal on April 3, 1997. The record fails to disclose whether petitioner filed a petition for review in the Fifth Circuit.

Petitioner contends that this court has jurisdiction to review the claims asserted in this petition under 8 U.S.C. § 1105a(a)(3) and under § 279 of the INA (8 U.S.C. § 1329).

### II. Jurisdiction

As a threshold matter, this court must examine its jurisdiction. Recently, Congress has passed two acts, the Antiterrorism and Effective Death Penalty Act (AEDPA) and the Illegal Immigration Reform and Immigrant Responsibility Act (IIRIRA), which significantly revise the Immigration and Nationality Act (INA) and have an impact on the district court's jurisdiction in immigration matters.

As discussed below, the district courts have reached various results as to what jurisdiction, if any, the district court has over issues related to deportation proceedings. A discussion of the district court's jurisdiction under former jurisprudence and current statutory law is instructive, particularly in this case where petitioner directly challenges the order of deportation issued against him.

Prior to April 24, 1996 when AEDPA was enacted, § 106(a) of the INA, (8 U.S.C. § 1105a(a)), provided that the courts of appeals were vested with exclusive jurisdiction to review "all final orders of deportation." *Haitian Refugee Center v. Smith,* 676 F.2d 1023, 1032 (5th Cir.1982). The term "final orders" was construed to mean all matters on which the validity of the order of deportation is contingent. *INS v. Chadha,* 462 U.S. 919, 103 S.Ct. 2764, 77 L.Ed.2d 317 (1983). However, another provision gave district courts *habeas corpus* jurisdiction in immigration matters. Section 1105a(a)(10) provided that "any alien held in custody pursuant to an order of deportation may obtain judicial review thereof by *habeas corpus* proceedings." Thus, the statute was facially contradictory.

The Fifth Circuit construed the statute to grant *habeas corpus* jurisdiction to the district courts only in matters which were collateral to the order of deportation, such as custody issues. The district courts did not have jurisdiction to review final orders of deportation and matters upon which the deportation order was contingent, such as the denial of discretionary relief from deportation. *Garcia v. Boldin,* 691 F.2d 1172, 1183 (5th Cir.1982).[2]

---

**1.** Section 212(c), (repealed), is effective during the transition period pursuant to IIRIRA, *infra.*

**2.** This principle applied only to those aliens placed in deportation proceedings as opposed to

those aliens who were placed in exclusion proceedings. *Habeas corpus* was the only method of judicial review with respect to orders of exclusion.

The general principle which evolved among the federal courts was that the sole and exclusive procedure for judicial review of an order of deportation was in the court of appeals pursuant to 8 U.S.C. § 1105a(a). However, it should be noted that there was some disagreement among federal courts as to what constituted a matter collateral to an order of deportation and what constituted a challenge to an order of deportation. Nevertheless, this court has consistently held that it has no jurisdiction over *habeas corpus* petitions which challenged the validity of orders of deportation. *Khan v. Henman*, docket no. 2:95–cv–782, dismissed 3/19/96, (J. Trimble); *Oguguo v. INS*, docket no. 2:95–cv–1829, dismissed 3/28/96, (J. Trimble), appeal dismissed as moot; *Eruchalu v. INS*, docket no. 2:96–1075, dismissed 7/16/96 (J. Trimble); *Holund v. Caplinger*, docket no. 6:96–2716, dismissed 6/5/97 (J. Haik).

AEDPA amended 8 U.S.C. § 1105a in significant respects. First, § 401(e) of AEDPA expressly and completely strikes § 1105a(a)(10), the *habeas corpus* provision.[3] Further, § 401(f) of AEDPA provides that the amendment is effective "on the date of enactment of this Act" which is April 24, 1996. Thus, by enactment of AEDPA, Congress divested federal district courts of the express statutory jurisdiction over *habeas* petitions brought by aliens.

Next, § 440(a) of AEDPA adds a new provision in place of the stricken provision, (§ 1105a(a)(10)) which reads:

Any final order of deportation against an alien who is deportable by reason of having committed a criminal offense [which constitute an aggravated felony, firearms offense, controlled substance violation, certain espionage or sabotage offenses and certain crimes involving moral turpitude under the INA] shall not be subject to review by any court.

Therefore, AEDPA removed from all federal courts, the jurisdiction to review a final order of deportation of an alien convicted of one of the criminal offenses listed in § 440(a).

Shortly after enactment of AEDPA, the Fifth Circuit analyzed § 440(a) under *Land-*

*graf v. USI Film Products*, 511 U.S. 244, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994), and determined that retroactive application of § 440(a) to appeals which were commenced prior to April 24, 1996 was appropriate. *Mendez–Rosas v. INS*, 87 F.3d 672 (5th Cir.), cert. denied, —— U.S. ——, 117 S.Ct. 694, 136 L.Ed.2d 617 (1997). Shortly thereafter, several other circuit courts issued opinions consistent with *Mendez–Rosas* finding that § 440(a) applied to appeals which were pending upon enactment of the statute. *Salazar–Haro v. INS*, 95 F.3d 309 (3d Cir.1996); *Hincapie–Nieto v. INS*, 92 F.3d 27 (2d Cir. 1996); *Qasguargis v. INS*, 91 F.3d 788 (6th Cir.1996); *Duldulao v. INS*, 90 F.3d 396 (9th Cir.1996); *Kolster v. INS*, 101 F.3d 785 (1st Cir.1996); *Boston–Bollers v. INS*, 106 F.3d 352 (11th Cir.1997). Only the Seventh Circuit has issued an opinion inconsistent with *Mendez–Rosas*. In *Reyes–Hernandez v. INS*, 89 F.3d 490 (7th Cir.1996), the court held that the changes made by § 440(a) of AEDPA do not apply to aliens who may have surrendered rights under the law which were in force prior to April 24, 1996, only to learn that Congress closed the doors of the judicial review.

On September 30, 1996, IIRIRA was enacted and again the immigration laws were significantly revised. IIRIRA further restricted the jurisdiction of federal courts to review orders of removal (formerly deportation) and issues related thereto.

Subsection 306(b) of IIRIRA entirely repealed § 106 of the INA, (8 U.S.C. § 1105a), and redesignated the provision pertaining to judicial review of orders of deportation. Section 242 of the INA, (8 U.S.C. § 1252), as amended by IIRIRA, now governs judicial review of immigration orders and decisions by the Attorney General under the INA. This provision reads, in pertinent part,

§ 1252. Judicial review of orders of removal

(a)(2) Matters not subject to judicial review

(B) Denials of discretionary relief.. no court shall have jurisdiction to review—...

---

**3.** 8 U.S.C. § 1252(e)(2), as amended, provides *habeas corpus* review which is extremely limited

and which is not relevant in the instant case as discussed below.

(ii) any other decision or action of the Attorney General the authority for which is specified under this chapter to be in the discretion of the Attorney General, other than the granting of relief under section 1158(a) [asylum] of this title.

(C) Orders against criminal aliens Notwithstanding any other provision of law, no court shall have jurisdiction to review any final order of removal against an alien who is removable by reason of having committed a criminal offense covered in section 1182(a)(2) or 1227(a)(2)(A)(iii), (B), (C), or (D) of this title, or any offense covered by section 1227(a)(2)(A)(ii) of this title for which both predicate offenses are, without regard to their date of commission, otherwise covered by section 1227(a)(2)(A)(i) of this title. . . .

(b) Requirements for review of orders of removal

(2) The petition for review shall be filed with the court of appeals . . . . .

(B) . . . If the petitioner claims to be a national of the United States and the court of appeals finds that a genuine issue of material fact about the petitioner's nationality is presented, the court shall transfer the proceeding to the district court. . . .

(7) Challenge to validity of orders in certain criminal proceedings

(A) If the validity of an order of removal has not been judicially decided, a defendant in a criminal proceeding charged with violating section 1253(a) [refusal to depart] of this title may challenge the validity of the order in the criminal proceeding . . . The district court, without a jury, shall decide the motion before trial. (B) . . . If the defendant claims in the motion to be a national of the United States and the district court finds that—

. . .

(9) . . . Judicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this chapter shall be available only in judicial review of a final order under this section. . . .

(e) Judicial review of orders under section 1225(b)(1) of this title . . .

(2) Habeas corpus proceedings

Judicial review of any determination made under section 1225(b)(1) [arriving alien who is denied admission] of this title is available in habeas corpus proceedings, but shall be limited to determinations of—

(A) whether the petitioner is an alien,

(B) whether the petitioner was ordered removed under such section, and

(C) whether the petitioner can prove by a preponderance of the evidence that the petitioner is an alien lawfully admitted for permanent residence, has been admitted as a refugee under section 1157 of this title, or has been granted asylum under section 1158 of this title. . . .

(g) Exclusive jurisdiction

Except as provided in this section and notwithstanding any other provision of law, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter.

Perhaps one of the most significant revisions contained in § 1252 is subsection (g), (INA § 242(g)). Because § 1252(g) provides that no court shall have jurisdiction to review claims in connection with the commencement of deportation proceedings or the execution of removal orders except as provided in that section, it is similar to its predecessor, 8 U.S.C. § 1105a, in that it generally provides the sole and exclusive procedure to challenge an order of removal. That procedure, with the express limited exceptions, is conducted in the court of appeals. *See* 8 U.S.C. § 1252(b)(2).

A debate exists among the courts as to the effective date of § 242(g), (8 U.S.C. § 1252(g)), as amended by § 306(g) of IIRIRA. The courts which have considered the effective date of this subsection have not reached consistent results. These courts have either found it applicable upon enactment (September 30, 1996) or 180 days after

enactment (April 1, 1997).[4] *See Duldulao v. INS*, 90 F.3d 396, 398 (9th Cir.1996) (effective upon enactment); *Vakalala v. Schiltgen*, 1997 WL 102501, p. 3, (N.D.Cal. February 26, 1997) (unpublished) (effective upon enactment); *Lalani v. Perryman*, 105 F.3d 334, 336 (7th Cir.1997) (effective April 1, 1997); *Benziane v. U.S.*, 960 F.Supp. 238 (D.Colo. 1997) (effective April 1, 1997); *Charan v. Schiltgen*, 1997 WL 135938, p. 2, (N.D.Cal. March 18, 1997) (unpublished) (J. Smith) (effective upon enactment); *Ugwoezuono v. Schiltgen*, 1997 WL 102499, p. 3, (N.D.Cal.2/24/97) (J. Illston) (effective upon enactment). Judge Trimble of this court has previously determined that this provision was effective upon enactment. *See Iwenjiora v. INS*, 96–cv–2899 (W.D.La.4/22/1997) (unpublished) (effective upon enactment).

Despite the disagreement by some courts as to the exact effective date of § 1252(g) as amended by IIRIRA, this debate need not be resolved as it is clear that this provision is now effective under either interpretation. Further, the language of § 306(c) of IIRIRA, ("claims arising from all past, pending, or future exclusion, deportation, or removal proceedings"), clearly exhibits Congress' intent that the provision applies to all claims pending upon its becoming effective whether that date is determined to be September 30, 1996 or April 1, 1997. Thus, this court finds that this provision applies to the instant proceeding.

The jurisdiction of this court to review orders of deportation (now referred to as removal) has not changed substantially, as the district court was generally without jurisdiction to review orders of deportation under 8 U.S.C. § 1105a and continues to be without jurisdiction to review orders of deportation under 8 U.S.C. § 1252(b), as amended by IIRIRA. The court of appeals continues to be the appropriate court in which an alien can obtain judicial review of an order of removal. Of course, the jurisdiction of the court of appeals is subject to the restriction created by § 440(a) of AEDPA which is codified at INA § 242(a)(2)(C), (8 U.S.C. § 1252(a)(2)(C)), and § 306(b) of IIRIRA codified at INA § 242(a)(2)(B), (8 U.S.C. § 1252(a)(2)(B)), which precludes judicial review of discretionary decisions by the Attorney General.[5]

As mentioned above, IIRIRA contains an extremely limited express grant of *habeas corpus* jurisdiction as follows:

—Review of orders of an immigration officer under § 1225(b)(1) (denial without a hearing of admission of alien arriving in the United States) but such review is limited to determinations of whether the petitioner is an alien, whether the petitioner was ordered removed, and whether the petitioner has been admitted as lawful permanent resident, a refugee, or has been granted asylum. (8 U.S.C. § 1252(e)(2.)).

Further, the IIRIRA expressly provides that the district court has jurisdiction to deter-

---

**4.** The confusion as to the effective date of the provision has been caused by § 306(c) of IIRIRA, which is entitled "EFFECTIVE DATE," and provides:

(1) IN GENERAL.—Subject to paragraph (2), the amendments made by subsections (a) and (b) shall apply as provided under Section 309, except that subsection (g) of section 242 of the Immigration and Nationality Act (as added by subsection (a)), shall apply without limitation to claims arising from all past, pending or future exclusion, deportation, or removal proceedings under such Act.

Section 309 of IIRIRA, titled "EFFECTIVE DATES; TRANSITION," sets out various procedures for making the transition from the prior provisions of the INA to the new ones set out in IIRIRA. Section 309(a) of the IIRIRA establishes the effective date for most of the amendments in Title III of IIRIRA, providing that "[e]xcept as provided in this section and sections 303(b)(2), 306(c), 308(d)(2)(D), or 308(d)(5) of

this division, this subtitle and the amendments made by this subtitle shall take effect on the first day of the first month beginning more than 180 days after the date of the enactment of this Act" which date is April 1, 1997.

**5.** 8 U.S.C. § 1252(a)(2)(C) codifies the restriction placed upon judicial review of orders of deportation issued against certain aliens who are excludable and certain criminal aliens who are convicted of certain offenses (aggravated felonies, controlled substance violations, certain firearms offenses, certain espionage offenses, and a combination of certain offenses involving moral turpitude) by § 440(a) of AEDPA; however, the codified version refers to offenses covered in § 1227 rather than § 1251, because § 305(a)(2) of IIRIRA redesignated this provision as 8 U.S.C. § 1251 as 8 U.S.C. § 1227. See, redesignation notes following 8 U.S.C. § 1251.

mine the validity of an order of deportation in a criminal proceeding where an alien is charged with failure to depart or giving false information, or other offense under 8 U.S.C. § 1253. See, 8 U.S.C. § 1252(b)(7).

█ Petitioner contends that this court has jurisdiction over his claims under Section 279 of the INA (8 U.S.C. § 1329). This provision provides:

> The district courts of the United States shall have jurisdiction of all causes, civil and criminal, brought by the United States that arise under the provisions of this subchapter. It shall be the duty of the United States attorney of the proper district to prosecute every such suit when brought by the United States. Notwithstanding any other law, such prosecutions or suits may be instituted at any place in the United States at which the violation may occur or at which the person charged with a violation under section 1325 or 1326 of this title may be apprehended. No suit or proceeding for a violation of any of the provisions of this subchapter shall be settled, compromised, or discontinued without the consent of the court in which it is pending and any such settlement, compromise, or discontinuance shall be entered of record with the reasons therefor. Nothing in this section shall be construed as providing jurisdiction for suits against the United States or its agencies or officers.

However, this provision is applicable only where federal court jurisdiction is not expressly precluded by IIRIRA. *See* by analogy, *McNary v. Haitian Refugee Center*, 498 U.S. 479, 492, 111 S.Ct. 888, 896, 112 L.Ed.2d 1005 (1991) ("In light of IRCA's [Immigration Reform Control Act] clear directions, district courts are not free to draw on their federal question jurisdiction under 28 U.S.C. § 1331 or on their jurisdiction granted under the immigration law, 8 U.S.C. § 1329, to entertain collateral attacks on procedures used to adjudicate SAW [amnesty program for special agricultural workers] applications. The exercise of either source of general power is barred by the precise and specific language of IRCA.").

The foregoing provisions provide the only express statutory authority for jurisdiction of the district court to review issues upon which an order of removal is contingent.[6] Some courts have held that by enactment of AEDPA and IIRIRA, Congress has impliedly repealed *habeas corpus* relief to deportable aliens under 28 U.S.C. § 2241 and divested the district court of all *habeas corpus* jurisdiction except that which is expressly provided in the INA.

In *Charan*, Judge Smith of the Northern District of California found that by enactment of 8 U.S.C. § 1252(g), Congress divested courts of jurisdiction to hear collateral challenges to BIA decisions. Judge Smith found that Congress streamlined the process to prevent delay in the deportation of aliens convicted of crimes and that allowing *habeas* relief would contradict congressional intent. *Charan*, 1997 WL 135938, p. 3, referring to H. Rep. No. 104–469(I), 104th Cong., 2d Sess. 359, 463 (1996). Judge Smith also noted that the petitioner did not allege that either the immigration judge or the BIA lacked jurisdiction to hear the deportation action nor did he allege any constitutional infirmities and left open the possibility that an alien found deportable may present a cognizable claim under the Suspension Clause. See U.S. Const., Article I, § 9, cl. 2 ("The Privilege of the Writ of Habeas Corpus shall not be suspended, unless when in Cases of Rebellion or Invasion the public Safety may require it.").

A similar result was reached in *Yang ' v. INS*, 109 F.3d 1185 (7th Cir.1997) where the Seventh Circuit stated, "effective April 1, 1997, [IIRIRA] abolishes even review under § 2241, leaving only the constitutional writ, unaided by statute." *Yang*, 109 F.3d at 1195. See also, *Safarian v. Reno*, 968 F.Supp. 1101 (E.D.La. 1997),("[b]y enacting the IIRIRA, Congress set forth a clear plan to divest federal courts of power to review agency decisions through the writ of *habeas corpus* "); *Benziane, supra; Gebehehu v. INS*, 955 F.Supp. 82 (N.D.Ill.1997); *Ugwoezuono v. Schiltgen*, 1997 WL 102499, p. 2, (N.D.Cal.2/24/97).

---

**6.** It should be noted that § 1252(b)(7) does not actually refer to *habeas corpus* in the district court; this subsection merely refers to the jurisdiction of the district court.

The courts which have held that AEDPA and IIRIRA have divested the district court of jurisdiction under § 2241 have relied on the principle that Article III grants Congress the power to "ordain and establish" such lower federal courts as it sees fit and, thus, permits Congress to define the jurisdiction of the lower federal courts. *Keene Corp. v. United States*, 508 U.S. 200, 207, 113 S.Ct. 2035, 2040, 124 L.Ed.2d 118 (1993). The plenary authority of Congress with respect to immigration matters is well established in jurisprudence. See *Fiallo v. Bell*, 430 U.S. 787, 792, 97 S.Ct. 1473, 1477–78, 52 L.Ed.2d 50 (1977). ("[O]ver no conceivable subject is the legislative power of Congress more complete than it is over the admission of aliens.") (quoting *Oceanic Steam Navigation Co. v. Stranahan*, 214 U.S. 320, 339, 29 S.Ct. 671, 676, 53 L.Ed. 1013 (1909)); see also *Carlson v. Landon*, 342 U.S. 524, 537, 72 S.Ct. 525, 532–33, 96 L.Ed. 547 (1952). Congress has the power to expand and contract the scope of federal courts' habeas corpus review through the passage of a statute, see *McCleskey v. Zant*, 499 U.S. 467, 483, 111 S.Ct. 1454, 1464–65, 113 L.Ed.2d 517 (1991) (holding that Congress can prevent prisoners from filing successive petitions without implicating any constitutional concerns), but must do so explicitly. *See, Felker v. Turpin*, ——— U.S. ———, ———, 116 S.Ct. 2333, 2338, 135 L.Ed.2d 827 (1996).

However, at least six district court decisions have stated that § 440(a) of AEDPA did not repeal § 2241 as it applies to aliens held in custody pursuant to an order of deportation. See *Yesil v. Reno*, 958 F.Supp. 828, 837 (S.D.N.Y.1997) (Chin, J.); *Eltayeb v. Ingham*, 950 F.Supp. 95, 98–99 (S.D.N.Y. 1997) (Sand, J.); *Veliz v. Caplinger*, 1997 WL 61456, at p. 2 (E.D.La. Feb.12, 1997); *Powell v. Jennifer*, 937 F.Supp. 1245, 1252–53 (E.D.Mich.1996); *Dunkley v. Perryman*, 1996 WL 464191, at *2–3 (N.D.Ill. Aug.9, 1996); *Mbiya v. INS*, 930 F.Supp. 609, 612 (N.D.Ga.1996).

In *Fernandez v. INS*, 113 F.3d 1151 (10th Cir.1997), when examining its jurisdiction under § 440(a), the Tenth Circuit noted that the possibility for judicial review of BIA decisions for "substantial" constitutional errors still existed under 28 U.S.C. § 2241. In *Powell v. Jennifer*, the petitioner sought a stay of deportation until the BIA ruled on his motion to reopen, and the district court adopted the "fundamental miscarriage of justice" standard of post-AEDPA *habeas* review first articulated *Mbiya v. INS*, 930 F.Supp. 609 (N.D.Ga.1996). See, *Powell*, 937 F.Supp. at 1252. The *Mbiya* court held that with respect to those aliens where judicial review is precluded due to a criminal conviction, "the Constitution requires only that the writ of *habeas corpus* extend to those situations in which the petitioner's deportation would result in a fundamental miscarriage of justice." *Mbiya*, 930 F.Supp. at 610. That court reasoned that such an "accommodation preserves the balance between the Suspension Clause and Congress' plenary authority to control immigration." *Id.* Consistent with the *Mbiya* holding, the court in *Moore v. INS*, 956 F.Supp. 878 (D.Neb.1997), concluded that the scope of *habeas* review, in light of recent changes to immigration law, is restricted to instances where a petitioner "can identify a grave constitutional error or a fundamental miscarriage of justice" in deportation proceedings. *Id.* 956 F.Supp. at 882. However, it is noteworthy that the court in *Moore* limited its review to a request for a discretionary stay, (a matter collateral to the order of deportation), and stated that it did not have jurisdiction over petitioner's challenge to the denial of the motion to reopen as it constituted a challenge to the order of deportation. *Id.* at 881, fn. 3. In *Duldulao*, the district court agreed that the "fundamental miscarriage of justice" standard was appropriate in determining the scope of *habeas* review available to criminal aliens who have been ordered deported. *Duldulao v. Reno*, 958 F.Supp. 476 (D.Hawai'i 1997).

The cases which refer to a "grave constitutional error" and "a miscarriage of justice" diverge to some extent. Some of the courts not only hold that the district court retains jurisdiction under § 2241 to review matters collateral to the order of deportation, but some of those courts also reviewed matters upon which the order of removal is contingent. See, *Eltayeb*, 950 F.Supp. at 100 (district court reviewed claim that petitioner was denied due process in deportation hearing

and proceeding on motion to reopen). However, other decisions continue to adhere to the jurisdictional principle that the district court is without authority to grant relief where the petitioner challenges the deportation order itself rather than challenging an unconstitutional restriction on his liberty. *Mbiya,* 930 F.Supp. at 613 ("[A] facial review of Mbiya's petition makes clear, he is challenging the deportation order itself rather than an unconstitutional restriction on his liberty. After passage of AEDPA, judicial involvement in a case such as this one is precluded except to the extent required by the Constitution. Because Mbiya's petition fails to assert facts alleging confinement constituting a fundamental miscarriage of justice, the court is without authority to grant relief.").

Other courts have held that all forms of judicial review were not eliminated by § 440(a) of AEDPA (for those aliens whom the provision precluded from review), but did not define the scope of that review or the jurisdiction therefor. See, *Chow v. INS,* 113 F.3d 659 (7th Cir.1997) (court stated that § 440(a) of AEDPA precluded review of order of deportation but stated that " § 440(a) does not include [a] sweeping prohibition on judicial review of deportation orders, we will not read section 440(a) as foreclosing all avenues of judicial review."). In *Kolster v. INS,* 101 F.3d 785 (1st Cir.1996) (pre-IIRIRA decision), the First Circuit concluded AEDPA's elimination of *habeas* relief for aliens who had committed certain types of crimes was constitutional only because such relief remained available under 28 U.S.C. §§ 2241 and 1651.

And yet still in *Yesil,* 958 F.Supp. at 836–38 the court found that the petitioner's constitutional claims were subject to review under § 2241 in spite of the restrictions contained in the AEDPA and IIRIRA. While the *Yesil* court did not go so far as to hold that non-constitutional claims were reviewable under *habeas* jurisdiction, the court characterized petitioner's allegations that he was denied § 212(c) relief on the basis of an erroneous application of law as "substantial constitutional claims." *Id.* at 839. The court construed petitioner's allegations to set forth

a denial of due process claim and therefore, concluded that the claims were reviewable under § 2241.

There is no Fifth Circuit or Supreme Court jurisprudence on the *habeas corpus* jurisdiction of the district court in immigration matters after enactment of the AEDPA and the IIRIRA. Thus, this court must determine the scope of its jurisdiction under the current INA and specifically, other than the very limited express provisions conveying *habeas corpus* jurisdiction in § 1252(e)(2), whether this court may address any issue involving immigration under § 2241.

Although petitioner does not expressly bring this action under 28 U.S.C. § 2241, the jurisdiction of the court under this statute should be examined as petitioner is in custody and challenges the order upon which that custody is authorized. The writ of *habeas corpus* under 28 U.S.C. § 2241 is generally available to a prisoner who "is in custody under or by color of the authority of the United States" or who "is in custody in violation of the Constitution or laws or treaties of the United States[.]" See 28 U.S.C. § 2241(c)(1) and (3). Under § 2241, habeas corpus will lie to protect the fundamental liberties guaranteed under the Constitution. 28 U.S.C. § 2241(c)(3) (habeas review is available if one is "in custody in violation of the Constitution or laws or treaties of the United States").

As demonstrated above, many courts that have addressed the jurisdiction of the district court after enactment of AEDPA and IIRIRA have reached the conclusion that Congress did not intend to preclude constitutional questions from judicial review. However, those courts diverge on what review is available under § 2241. See, *Mbiya, supra; cf. Eltayeb, supra, and In Matter of Castellanos,* 955 F.Supp. 96 (W.D.Wash.1996) (jurisdiction to review petitioner's claim that he was denied full and fair asylum hearing even though petitioner was convicted of offense listed under § 440(a) where the petitioner demonstrates a miscarriage of justice). What is disconcerting about *Castellanos, Eltayeb,* and similar decisions is that the matters reviewed in those cases were matters upon which the order of deportation was

contingent as opposed to collateral. This court has never held that *habeas corpus* jurisdiction existed to review final orders of deportation (except in the context of exclusion proceedings).

The undersigned concurs with the holding *Mbiya* to the extent that the court found that the district courts retain some jurisdiction, albeit limited, over immigration matters under 28 U.S.C. § 2241. Particular emphasis should be placed upon the *Mbiya* court's finding that the district court had no jurisdiction over matters upon which the order of deportation was contingent either before or after the enactment of AEDPA and IIRIRA.

Even in light of congressional power to limit the scope of this court's jurisdiction, the undersigned does not conclude that AEDPA and IIRIRA completely divested the district courts of *habeas corpus* jurisdiction under § 2241 in immigration matters as was the conclusion by the *Sefarian* court and other courts. AEDPA and IIRIRA do not contain clear evidence of congressional intent to divest district courts of all *habeas corpus* jurisdiction under § 2241. Furthermore, serious constitutional questions would be raised if these acts were viewed as abolishing *habeas corpus* jurisdiction under § 2241 in immigration matters.

The undersigned finds the line of cases which apply the "miscarriage of justice" standard to determine whether review is available under § 2241 unpersuasive, because this approach would broaden the scope of this court's jurisdiction to include matters upon which the orders of removal are contingent. Certainly, there is no evidence in AEDPA or IIRIRA that Congress intended to broaden the *habeas corpus* jurisdiction of the district court in immigration matters. However, the approach taken by the courts which apply the "miscarriage of justice" standard and limit that review to issues which are collateral to the order of removal is somewhat persuasive.

**Conclusion as to the jurisdiction of the District Court**

 After a thorough review of the INA, before and after AEDPA and IIRIRA, and relevant jurisprudence as discussed above, the undersigned concludes that this court retains *habeas.corpus* jurisdiction under § 2241 to review constitutional claims relating to matters which are collateral to an order of removal (generally custody issues) and are not expressly precluded from judicial review by AEDPA or IIRIRA. In summary, this court has no *habeas corpus jurisdiction* to review orders of removal (deportation) as the courts of appeals have exclusive jurisdiction under 8 U.S.C. § 1252(c) irrespective of whether the alien· is precluded from review therein by 8 U.S.C. § 1252(b) (§ 440(a) of AEDPA). The fact that he may be precluded from review in the Fifth Circuit does not expand the jurisdiction of this court.

Because this court has consistently held that it is without jurisdiction to review an order of deportation under prior law and continues to be without jurisdiction to review orders of removal, it necessarily follows that § 440(a) (8 U.S.C. § 1252(b)) did not substantially change the scope of this court's jurisdiction. Further, this court no longer has jurisdiction to review a denial of a stay of deportation, because such review is precluded by 8 U.S.C. § 1252(a)(2)(B)(ii) (no jurisdiction over discretionary decision) and (g) (§ 1252 provides exclusive procedure to challenge decision to execute order of removal). Under prior law, the denial of a discretionary stay was a matter collateral to the order of deportation and could be reviewed under the district court's *habeas corpus* jurisdiction.

## III. Application to Petitioner's Claims

### Challenge to Order of Deportation

Application of the above jurisdictional principles to the instant case requires rejection of petitioner's challenge to the order of deportation issued against him. Petitioner claims that he is entitled to discretionary relief from deportation and was denied that relief without a hearing, and therefore, he contends that he has been denied due process. This court is without jurisdiction to review the challenge, as the exclusive procedure to challenge the order of deportation is in the court of appeals. Even if petitioner is precluded from review in the appropriate circuit court of appeals under 8 U.S.C. § 1252(a)(2)(C) (§ 440(a) of AEDPA), this court is not re-

quired to review petitioner's challenge to the deportation order. Moreover, this court has no jurisdiction to review the challenge.

Furthermore, this court has no jurisdiction to grant petitioner a stay of deportation under 8 U.S.C. § 1252(a)(2)(B)(ii) and (g).

For the foregoing reasons, **IT IS RECOMMENDED** that petitioner's challenge to the order of deportation and request for a stay of deportation be **DISMISSED WITH PREJUDICE** as this court is without jurisdiction to review the order of deportation or to grant petitioner the requested relief

July 7, 1997.