Clement Ogbozor OZOANYA

v.

Janet RENO, et al.

Civil Action No. 97–1448.

United States District Court,
W.D. Louisiana,
Lake Charles Division.

Aug. 28, 1997.

---

⨠53.9

Ogbozor Clement Ozoanya, Federal Detention Center, Oakdale, LA, pro se.

Kimberly Kolch, Catholic Legal Immigration, Oakdale, LA, for Petitioner.

John M. Facciola, U.S. Atty. Office Judiciary Center, Washington, DC, for Respondents.

### MEMORANDUM RULING

TRIMBLE, District Judge.

Before the court is a petition for a writ of *habeas corpus* filed by petitioner, Clement Ogbozor Ozoanya. Petitioner is detained by the Immigration and Naturalization Service (INS) and is confined in the Federal Detention Center in Oakdale, Louisiana. Petitioner names Attorney General Janet Reno and the INS as respondents.

This petition was filed in the United States District Court for the District of Columbia on August 28, 1996 and transferred to this court on July 14, 1997. In the original petition, petitioner challenged only his detention. Petitioner later amended the petition on February 28, 1997 to include a challenge to the order of deportation and denial of discretionary relief from deportation under § 212(c) of the Immigration and Nationality Act, and he also requested a stay of deportation. The district court in the District of Columbia ordered the respondents to answer the petitioner and also appointed counsel to represent petitioner.

On December 30, 1996, respondents filed a motion to dismiss [doc. 11] seeking to dismiss petitioner's challenge to his detention on the basis that this claim was moot in light of the enactment of Transition Period Custody Rules as part of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA). In light of petitioner's amended petition challenging his order of deportation and the denial of discretionary relief and his request for a stay of deportation, the respondents filed a supplemental motion to dismiss [doc. 20] on March 14, 1997 seeking to have the court dismiss petitioner's *habeas corpus* petition and deny his request for a stay of deportation on the basis that the court lacked jurisdiction over these matters. The district court for the District of Columbia court transferred this case without ruling on respondent's motion to dismiss. Instead, the court found that the case should be transferred to this court as petitioner's custodian was within the Western District of Loui-

siana. However, prior to the transfer, the court issued a stay of deportation until this court made a final disposition of the petition.

## I. Background

Petitioner is a native and citizen of Nigeria who entered the United States on February 28, 1988 as a non-immigrant visitor. Thereafter, petitioner married a United States citizen and adjusted his status to that of lawful permanent resident. On April 24, 1994, petitioner was convicted of the offense of Conspiracy to Possess With Intent to Distribute and Distribution of Heroin in violation of 21 U.S.C. § 846 in the United States District Court for the Eastern District of Virginia. On December 5, 1995, the INS issued an order to show cause to petitioner charging him with being deportable as an aggravated felon under § 241(a)(2)(A)(iii) of the Immigration and Nationality Act (INA). When petitioner's criminal sentence expired, his custody was immediately transferred to the INS, and he was detained without bond.

 Petitioner sought a bond redetermination hearing before an immigration judge. A custody redetermination hearing was held on April 11, 1996. On May 1, 1996, by written decision, the immigration judge denied petitioner's request for a change in custody status. *See* Government Exhibit D, attached to Doc. 20. On February 28, 1996, petitioner was brought to immigration court for deportation proceedings. This hearing was continued so that petitioner could seek the aid of counsel. Petitioner's deportation hearing was subsequently scheduled on the following dates, March 15, 1996, April 1, 1996, April 10, 1996, and April 24, 1996, and was continued each time so that petitioner could retain an attorney to assist him. Finally, on May 10, 1996, petitioner's deportation hearing was conducted.[1] Petitioner did not participate in the deportation hearing, therefore, it was necessary for the INS to prove each and every allegation in the Order to Show Cause. At the conclusion of this hearing, the immigration judge found petitioner to be deportable and ordered him deported to Nigeria. The immigration judge further found petitioner ineligible for discretionary relief from deportation under § 212(c) of the INA, as amended by § 440(d) of the Antiterrorism and Effective Death Penalty Act (AEDPA) which was enacted on April 24, 1996.[2] *See* Government Exhibit B, attached to doc. 20.

Petitioner claims that he was denied due process in the immigration proceedings and thus, the order of deportation issued against him is invalid.

## II. Law and Analysis

### Jurisdiction

As a threshold matter, this court must examine its jurisdiction to entertain the mer-

---

1. At this hearing, petitioner asked for yet another continuance so that he might retain counsel. Petitioner stated that he had no money but that when he obtained some money he would hire an attorney. This request was denied by the immigration judge due to the fact that petitioner's request was only based on speculation of his future ability to hire an attorney. Additionally, the immigration judge noted that petitioner had been given several continuances and more than sufficient time to engage an attorney.

 In the order of Judge Friedman transferring this matter from the District of Columbia to the Western District of Louisiana, Judge Friedman noted that "While clearly there are limits as to how long one can delay a proceeding and for what reasons, it appears that petitioner has presented a cognizable claim of a denial of his right to counsel that is properly the subject of a petition for writ of *habeas corpus.*" Contrary to Judge Friedman's statement, this court finds that petitioner was not denied the right to counsel. There is no Sixth Amendment right to counsel in a deportation proceeding. Further, petitioner was given at least four continuances for the purpose of retaining counsel, and he had no definite plans for retaining counsel. This court finds that the immigration judge's actions adequately protected petitioner's right to retain counsel on his own behalf at no expense to the government.

2. Prior to enactment of AEDPA, aliens convicted of aggravated felonies who were sentenced to five years or more imprisonment or who were found deportable on a ground for which a comparable ground of exclusion did not exist (i.e., firearms offenses) were ineligible for § 212(c) relief. Section 440(d) of AEDPA dramatically increased the number and class of crimes eliminating the right of aliens convicted of those offenses to apply for § 212(c). The Attorney General has determined that the amendment applied to all pending applications for § 212(c) regardless of the date of conviction. *Matter of Soriano*, Interim decision 3289, 1996 WL 426888, February 21, 1997.

its of petitioner's claims. Recently, Congress has significantly revised the INA through enactment of AEDPA and IIRIRA.

A discussion of the district court's jurisdiction under former jurisprudence and current statutory law is found in *Thomas v. INS*, 975 F.Supp. 840 (W.D.La.1997). In that case, this court held that the district court retains some limited *habeas corpus* jurisdiction under § 2241. See also, *Williams v. INS*, 114 F.3d 82, 83 (5th Cir.1997) ("limited opportunity to apply for a writ of habeas corpus may remain"); *Nguyen v. INS*, 117 F.3d 206, 207 (5th Cir.1997).

Specifically, this court held in *Thomas* that it has jurisdiction to review constitutional claims relating to matters which are collateral to an order of removal/deportation which are not expressly precluded from judicial review by AEDPA or IIRIRA. In reaching this conclusion, the court noted that it has consistently held that it had no jurisdiction over *habeas corpus* petitions which challenged the validity of orders of deportation under the INA prior to enactment of AEDPA or IIRIRA. *Khan v. Henman*, docket no. 2:95–cv–782, dismissed 3/19/96, (J. Trimble); *Oguguo v. INS*, docket no. 2:95–cv–1829, dismissed 3/28/96, (J. Trimble), appeal dismissed as moot; *Eruchalu v. INS*, docket no. 2:96–1075, (pending) (interlocutory appeal dismissed as moot with the Fifth Circuit noting correctness of district court's finding that it lacked subject matter jurisdiction) (J. Trimble); *Holund v. Caplinger*, docket no. 6:96–2716, dismissed 6/5/97 (J. Haik). This court expressly found that it had no jurisdiction to review orders of removal/deportation as the courts of appeals have exclusive jurisdiction under 8 U.S.C. § 1252(c) irrespective of whether judicial review is barred by 8 U.S.C. § 1252(a)(2)(C), (§ 440(a) of AEDPA).[3]

■ This court notes Judge Friedman's finding that the Supreme Court and a number of courts of appeals have concluded that challenges to deportation proceedings and immigration detainers are cognizable under

the habeas corpus statute. In support of this finding, the court cited *Marcello v. INS*, 634 F.2d 964 (5th Cir.), *cert. denied*, 452 U.S. 917, 101 S.Ct. 3052, 69 L.Ed.2d 421 (1981). While it is true that many courts have construed the Fifth Circuit's decision in *Marcello* to hold that the district court could under prior law entertain a challenge to a deportation order under its *habeas corpus* jurisdiction, this court never construed *Marcello* in such a manner. In *Marcello*, the Fifth Circuit held that the district court had jurisdiction over the petitioner's challenge to a discretionary denial of a request for suspension of deportation. Marcello sought review of a discretionary denial of suspension of deportation which was not made during the deportation proceeding. Cf. *Foti v. Immigration and Naturalization Service*, 375 U.S. 217, 229, 84 S.Ct. 306, 314, 11 L.Ed.2d 281 (1963) (all determinations made during and incident to the administrative proceeding and reviewable by the BIA are included within the "ambit of the exclusive jurisdiction of the Courts of Appeals"). The Fifth Circuit discussed the jurisdiction of the district court in the context of custody. The purpose of the writ of *habeas corpus* is to challenge illegal custody and secure a release from custody. *Preiser v. Rodriguez*, 411 U.S. 475, 93 S.Ct. 1827, 36 L.Ed.2d 439 (19). Based upon former statutory law, the court's reasoning in *Marcello*, and the purpose of the writ of *habeas corpus*, this court never construed *Marcello* to hold that an alien could challenge an order of deportation under its *habeas corpus* jurisdiction.

■ This court's jurisdiction has not been expanded under AEDPA or IIRIRA regardless of whether an alien is precluded from judicial review of his order of deportation/removal in the appropriate circuit court under 8 U.S.C. § 1252(a)(2)(C). See, *Thomas, supra*. Neither AEDPA nor IIRIRA contain any evidence that the jurisdiction to review orders of deportation is now available in the district court (except as expressly provided therefor in specific circumstances).

---

**3.** 8 U.S.C. § 1252(a)(2)(C) precludes judicial review of an order of removal issued against an alien convicted of an offense covered in § 1182(a)(2) or 1227(a)(2)(A)(iii), (B), (C), or (D)

(aggravated felony, controlled substance violation, firearms offense, and certain espionage offenses).

Thus, this court lacks subject matter jurisdiction to review an order of deportation with certain express exceptions which are not applicable here.

**Due Process Challenge**

Application of the above jurisdictional principles to the instant case requires rejection of petitioner's due process challenge to the deportation hearing and the denial of § 212 relief as both claims bear directly on the validity of the order of deportation.

The court notes that at least two district courts have held that the Attorney General could not apply the amended version of the § 212(c) to aliens whose convictions occurred prior to enactment of the AEDPA. See, *Mojica v. Reno*, 970 F.Supp. 130 (E.D.N.Y. 1997); *Yesil v. Reno*, 958 F.Supp. 828 (S.D.N.Y.1997) and supplemental decision, 973 F.Supp 372 (1997). These courts entertained the challenges under their § 2241 jurisdiction. *Mojica*, at pp. 152–53. This court does not concur in the reasoning of those courts.

■ Thus, this court is without jurisdiction to review petitioner's claims that he was denied due process in the deportation hearing or that he has been unlawfully denied the opportunity to apply for discretionary relief from deportation as these claims constitute direct challenges to the order of deportation issued against petitioner and over which the appropriate circuit has exclusive jurisdiction.

**Stay of Deportation**

This court further concluded in *Thomas* that it no longer has jurisdiction to review a denial of a stay of deportation because such review is precluded by 8 U.S.C. § 1252(a)(2)(B)(ii)[4] and (g)[5]. Under prior law, the denial of a discretionary stay was a matter collateral to the order of deportation and was reviewed under § 2241 *habeas* jurisdiction.

■ Furthermore, this court is precluded from enjoining petitioner's deportation/removal under 8 U.S.C. § 1252(f)(2) which provides:

Notwithstanding any other provision of law, no court shall enjoin the removal of any alien pursuant to a final order under this section unless the alien shows by clear and convincing evidence that the entry or execution of such order is prohibited as a matter of law.

Petitioner has not shown that execution of the order of deportation issued against him is prohibited as a matter of law.

Thus, the stay issued by the district court in the District of Columbia will be vacated.

**Illegal Detention/Custody**

In petitioner's original petition for writ of *habeas corpus*, he challenged his detention in INS custody. He claimed that he was unlawfully denied bond under § 440(c)[6] of the newly enacted Anti–Terrorism and Effective Death Penalty Act (AEDPA). He claimed that this blanket denial of bond to aggravated felons without an opportunity for an individual bond determination violated his constitutional rights.

In response to the petitioner's challenge to his detention in his application for writ of *habeas corpus*, the INS moved to dismiss the

---

**4.** 8 U.S.C. § 1252(a)(2)(B)(ii) provides "no court shall have jurisdiction to review ... any decision or action of the Attorney General for which is specified under this chapter to be in the discretion of the Attorney General ..."

**5.** 8 U.S.C. § 1252(g) provides "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter."

**6.** Section 440(c) of the Anti–Terrorism and Effective Death Penalty Act [AEDPA] amended U.S.C.

§ 1252(a)(2) to provide in pertinent part as follows:

The Attorney General shall take into custody any alien convicted on any criminal offense covered in section 241(a)(2)(A)(iii) [aggravated felony], (B) [controlled substances], (C) [firearms offenses], or (D) [miscellaneous crimes], or any offense covered by section 241(a)(2)(A)(ii) [multiple criminal convictions] for which both the predicate offenses are covered by section 241(a)(2)(A)(I) [crimes of moral turpitude] upon release of the alien from incarceration ... [and shall] not release such felon from custody.

challenge as moot due to petitioner's eligibility for an individualized bond redetermination before the District Director under the Transition Period Custody Rules of IIRIRA. *See* Doc. 11. The INS argues that this *habeas corpus* petition is now moot due to the fact that he is now entitled to the relief that he seeks.

In response to the INS's arguments, petitioner states that despite the new law, he has not received a bond redetermination. Thus, he claims that this court has jurisdiction to review the denial of discretionary relief, and he seeks to have the court order his release from custody. From the subsequent pleadings and orders entered in this case, it is unclear whether petitioner continues to pursue his claim for unlawful detention, but in an abundance of caution, this court will address this claim on the merits.

On April 11, 1996, petitioner went before an Immigration Judge in Oakdale, Louisiana for a bond redetermination hearing. Following this hearing, on May 1, 1996, the Immigration Judge issued a memorandum opinion wherein he considered petitioner's request for bond under the standard set forth in section 242(a)(2) of the Immigration and Nationality Act [8 U.S.C. § 1252(a)(2) ] and concluded that petitioner should be detained without bond.[7] *See* Government Exhibit D, attached to doc. 20. The Immigration Judge concluded that petitioner, an aggravated felon, had not rebutted the presumption against his release by showing that he is not a threat to the community. At the conclusion of the hearing, the Immigration Judge noted that since the filing of petitioner's appeal, AEDPA was signed into law on April 24, 1996 by President Clinton and that § 440(c) of AEDPA precluded petitioner's release on bond.

However, the Immigration Judge stated "Nevertheless, the Court's decision and the filing of the Notice of Appeal occurred before the Terrorism Prevention Act was signed into law. Thus, the Court's bond memorandum shall rely on the bond provisions in effect on the date of the bond hearing." *See* p. 5 of Government Exhibit D, attached to Doc. 20. It is clear from the Immigration Judge's statement that he relied on the pre-AEDPA law in denying petitioner bond at the redetermination hearing.

Prior to the recent amendments to the Immigration and Nationality Act, federal district courts had limited jurisdiction to review bond determinations for abuse of discretion. *See de Gonzalez v. INS,* 996 F.2d 804 (6th Cir.1993); *Bamidele v. Gerson,* 93–4201, slip op., 995 F.2d 223 (5th Cir. June 7, 1993) (unpublished); *Ajayi v. Caplinger,* 93–5096, slip op., 19 F.3d 15 (5th Cir. March 15, 1994) (unpublished). However, this review was only conducted after the petitioner produced evidence indicating that he had exhausted his administrative remedies.

Initially the court notes that it is questionable whether petitioner exhausted the administrative remedies available to him by filing a timely appeal to the BIA. Moreover, even if petitioner had exhausted his administrative remedies, his challenge to his bond would not be reviewable by this court. Under the law as it currently stands following the amendments of AEDPA and IIRIRA, this court is statutorily divested of jurisdiction to review discretionary decisions of the Attorney General and her agents. *See* 8 U.S.C. § 1252(a)(2)(B)(ii); *see also* 8 U.S.C. § 1226(e). Further, he has been given all the process that is due to him in the form of an individual bond hearing at which the im-

---

**7.** Prior to the recent amendments and at the time of petitioner's bond redetermination hearing, 8 U.S.C. § 1252(a)(2) created a rebuttable presumption against the release of any alien who is convicted of an aggravated felony. *See Matter of Ellis,* 1993 WL 65657 (BIA 1993). Specifically 8 U.S.C. § 1252(a)(2) read as follows:

(A) The Attorney General shall take into custody any alien convicted of an aggravated felony upon release of the alien (regardless of whether or not such release is on parole, supervised release, or probation, and regardless of the possibility of rearrest or further confinement in

respect of the same offense). Notwithstanding paragraph (1) or subsections (c) or (d) but subject to subparagraph (B), the Attorney General shall not release such felon from custody. (B) The Attorney General may not release from custody any lawfully admitted alien who has been convicted of an aggravated felony, either before or after a determination of deportability, unless the alien demonstrates to the satisfaction of the Attorney General that such alien is not a threat to the community and that the alien is likely to appear before any scheduled hearings.

migration judge concluded that he should be detained without bond.

AEDPA was signed into law by President Clinton on April 24, 1996. This Act amended several provisions of the Immigration and Nationality Act. Of particular interest to this case is section 440(c) of AEDPA which amended 8 U.S.C. § 1252(a)(2) to provide for mandatory detention of aliens classified as aggravated felons and aliens convicted of specifically enumerated crimes. This amendment took away the discretionary authority of the Attorney General to release certain criminal aliens upon a showing that they were lawfully admitted, likely to appear at future hearings, and are not a threat to the community. Courts which have addressed the retroactive application of § 440(c) of AEDPA to aliens who have been convicted and released from their criminal sentences prior to AEDPA's enactment have been reluctant to apply this provision retroactively. *See United States v. Igbonwa,* 1996 WL 694178 *3 (E.D.Pa.1996); *DeMelo v. Cobb,* 936 F.Supp. 30, 35 (D.Mass.1996); *Montero v. Cobb,* 937 F.Supp. 88 (D.Mass.1996); *Veliz v. Caplinger,* 1997 WL 61456 (E.D.La.1997); *see also Villagomez v. Smith,* 1996 WL 622451 (W.D.Wash.1996).

The question regarding the propriety of applying § 440(c) retroactively to deny an alien release from INS detention became moot due to the enactment of IIRIRA. Section 303(b)(3) of IIRIRA contains the "Transition Period Custody Rules" which specifically replace the amendments to the immigration custody laws made by § 440(c) of AEDPA. *See In re Garvin–Noble,* 1997 WL 61453 (B.I.A.1997); *In re Valdez–Valdez,* 1997 WL 80989 (B.I.A.1997).[8] The Transition Period Custody Rules restore discretionary authority to the Attorney General to release many criminal aliens who are either lawfully admitted to this country or who cannot be removed because the designated country will not accept them. The statutory standards which these aliens must meet for release are very similar to the pre-AEDPA standards applied to aggravated

felons. The only significant difference is that the Transition Period Custody Rules apply to aggravated felons as well as to some non-aggravated felons who have been convicted of specific crimes. Petitioner's conviction for a controlled substance violation places him within the category of aliens who fall within the Transition Period Custody Rules.

Accordingly, this court finds that the Immigration Judge did not impermissibly rely on § 440(c) of AEDPA to deny petitioner release from INS detention without due process. Instead, the decision of the Immigration Judge was made following an individual bond hearing and was clearly based on petitioner's failure to meet the pre-AEDPA standard set forth in 8 U.S.C. § 1252(a)(2) for aggravated felons. Further, the court finds that the Transition Period Custody Rules apply to petitioner's current custody and any subsequent application for bond redetermination that he might make. This finding is in accord with recent decisions of the BIA wherein the BIA held that the Transition Period Custody Rules apply to criminal aliens in INS custody who are seeking bond redeterminations irrespective of when or how the alien came into INS custody. *See In re Garvin–Noble,* 1997 WL 61453 (BIA 1997); *In re Valdez–Valdez,* 1997 WL 80989 (BIA 1997). Because petitioner's denial of bond was not based on § 440(c), petitioner is not automatically entitled to a bond redetermination under the Transition Period Custody Rules. Nevertheless, he can apply to the District Director for a bond redetermination under these transitional rules.

### III. Conclusion

Despite the finding of the federal district court in the District of Columbia, this court finds that it is without jurisdiction to review petitioner's challenge to his deportation order. This court has consistently held that challenges to deportation orders, including the denial of § 212 relief, must be made in the appropriate circuit court of appeal. The recent amendments to the Immigration and

---

**8.** The Transition Period Custody Rules were invoked by the Attorney General on October 9,

1996. *See In re Garvin–Noble, supra.*

Nationality Act did not expand this court's jurisdiction. *See Thomas v. INS,* 97–cv–659 (W.D.La.1997) (J. Trimble). Additionally, no federal court has jurisdiction to stay an order of deportation. *See* 8 U.S.C. § 1252(f),. (g).

Petitioner's due process challenge to his detention is without merit as the Immigration Judge did not retroactively apply § 440(c) to deny petitioner release from custody, and petitioner received all of the process to which is was due in an individual bond redetermination hearing.

In accordance with the foregoing findings of this court,

**IT IS ORDERED** that the respondents' motions to dismiss be **GRANTED** and that this petition for writ of *habeas corpus* be **DENIED** and **DISMISSED WITH PREJUDICE.**

**IT IS FURTHER ORDERED** that the stay in this matter issued by the district court in the District of Columbia be **VACATED,** and that petitioner's order of deportation be carried out forthwith.